### THE STATE OF SOUTH CAROLINA v. EVANS.

1. Where the State sues in her own courts for the recovery of real pro-
   perty, and it appears that she has divested herself by grant of the land
   in dispute, she must, like any other plaintiff, prove title in herself by
   showing that she regained it by purchase or escheat, or in some other
   way.
2. Where land is conveyed to "A, land commissioner [which is a public
   office created by statute], his successors, their heirs and assigns for-
   ever, * * * to have and to hold to the proper use and behoof of the said
   party of the second part, his heirs and assigns forever," with warranty
   "to the said party of the second part, his heirs and assigns," the State
   cannot maintain an action for the recovery of this land, because the
   deed does not convey to her the legal title.
3. It would seem that the legislature never intended that the title to
   lands purchased by the land commissioner should be taken to the State,
   but rather to the land commissioner, so that resales could be readily
   made by him.
4. The statute of uses did not vest in the State title to land conveyed to
   the land commissioner and his successors, for they were charged, *inter
   alia*, with the duties of dividing, selling, and leasing.

Before WALLACE, J., Chesterfield, November, 1889.

This action was commenced on May 28, 1886, for the recovery
of a large body of land alleged to be in the possession of W. A.
Evans and several other defendants.    The plaintiff claimed under
the following deed :

This indenture, made the second day of December, in the
year of our Lord one thousand eight hundred and sixty-nine,
between Daniel Wadsworth and his wife, Sarah Wadsworth, of
the County of Chesterfield, in the State of South Carolina, of
the one part, and Charles P. Leslie, land commissioner, and his
successor or successors in office, of the State of South Carolina,
of the other part, witnesseth : That the said Daniel Wadsworth
and his wife, Sarah Wadsworth, for and in consideration of the
sum of eight thousand dollars ($8,000), to them in hand paid by
the said Charles P. Leslie, land commissioner, his successor or
successors, the receipt whereof the said Daniel Wadsworth and
his wife, Sarah Wadsworth, doth hereby acknowledge, hath
given, granted, bargained and sold, aliened, and confirmed, and
by these presents doth give, grant, bargain, and sell, alien, and

confirm, unto the said Charles P. Leslie, land commissioner, his successor or successors, their heirs and assigns forever, all that tract, piece, or parcel of land situate, lying, and being in the County of Chesterfield, State aforesaid, and bounded and described as follows, to wit: * * * containing two thousand four hundred and sixty-two acres, more or less, and more particularly described in the plat accompanying this deed, surveyed November 30th, 1869, by Gil Dixon Fox (surveyor). And also all the roads, ways, waters, water courses, and all and every the appurtenances thereunto belonging, or in any wise appertaining; and the reversion and reversions, and remainders, rents, issues and profits of the aforesaid land and premises, and every part thereof, and all the estate, rights, titles, interest, claim, property, and demand whatsoever of the said Daniel Wadsworth and his wife, Sarah Wadsworth, parties of the first part, of, in, and to the land and premises hereby granted. To have and to hold the aforesaid lands, and his heirs and assigns to the proper use and behoof of the said party of the second part, his heirs and assigns forever. And the said David Wadsworth and his wife, Sarah Wadsworth, for themselves and their heirs, the aforesaid lands and premises, and every part thereof, against themselves and their heirs, and against the claim, or claims, of all and every other person or persons whatsoever to the said party of the second part, his heirs and assigns, shall and will forever warrant and defend by these presents.

In testimony whereof, &c.

Other matters are stated in the opinion of this court.

*Mr. Earle,* attorney general, and *Messrs. Dudley & Newton,* for appellant.

*Messrs. Hough & Kennedy* and *Livingston & McIver,* contra.

June 25, 1890. The opinion of the court was delivered by

MR. JUSTICE McIVER. In this case the attorney general, on behalf of the State, filed an information stating that there was a large body of land in the County of Chesterfield belonging to the State, which the defendants have intruded upon, and are still intruding upon, to the great damage of the State; wherefore judgment is demanded for an injunction to restrain defendants from further intrusion and for damages. The defendants answered, denying title in the State, and setting up title in them-

selves. To maintain the issue on the part of the plaintiff a grant, alleged to cover the land in dispute, issued to one Daniel Wadsworth, was offered in evidence, and a deed from said Wadsworth to C. P. Leslie, land commissioner of the State of South Carolina, and his successors in office, together with much parol evidence, designed to show that said grant and deed covered lands upon which the defendants had intruded, and of which they were still in possession, and also some evidence as to the rental value of said lands.

At the close of the plaintiff's testimony, a motion for a nonsuit was made by defendants upon the several grounds set out in the "Case," which motion was granted upon the ground that the plaintiff, so far from showing any title, had shown title out of herself, and was not, therefore, entitled to the judgment demanded; and judgment of non-suit was accordingly rendered. From this judgment plaintiff appeals upon the several grounds set out in the record, which need not be stated here, as they, in fact, raise but a single question as to whether there was any such title in the plaintiff as would be sufficient to sustain the action. The respondents, in accordance with the proper practice, gave notice that, in case this court should reach the conclusion that the Circuit Judge had erred in granting the non-suit upon the ground stated, they would seek to sustain the judgment upon the other grounds upon which they rested their motion, which are likewise set out in the record. But as we concur in the view taken by the Circuit Judge, these additional grounds need not be considered or stated.

In this case it will be observed that the plaintiff did not rest its claim upon its sovereignty, as in the cases of *State* v. *Pacific Guano Co.* (22 S. C., 50), and *State* v. *Pinckney* (*Ibid.*, 484), but, on the contrary, claimed as a purchaser the land which had been previously granted by the State. This being so, the State, like any other purchaser, was bound to establish its title before any recovery could be had. As was said by Mr. Justice McGowan, in the Pacific Guano case, *supra :* "When the State comes into her own courts to assert a right of property, she is, of course, bound by all the rules established for the administration of justice between individuals. This is practically an action

for the recovery of real estate, and one of the rules of procedure applicable in such case is, that the plaintiff must recover upon the strength of his own title, and not the weakness of the defendant's." And, as was said by the same learned justice in *State* v. *Pinckney, supra:* "But it is said that an individual would have to recover, if at all, upon the strength of his own title, of which he must make proof. That is true, and so, it seems to us, the State was required to do in these cases." Of course, where, as as in the cases cited, the State claims by virtue of its sovereignty as the common source of title, its bare assertion is *prima facie* sufficient; but where, as in this case, and in the case of *State* v. *Stark* (3 Brev., 101), it appears that the State has, by its own grant, divested itself of the paramount title and conveyed it to another, then the State, like any other plaintiff, is bound to show that it has regained the title, either by purchase or escheat, or in some other way.

The plaintiff's counsel in this case appears to have recognized the correctness of this view, and, knowing that the State had parted with its original title by its voluntary grant to Wadsworth, having proved that fact, then undertook to show that the State had regained the title by purchase from its grantee, Wadsworth. For this purpose the deed from Wadsworth to C. P. Leslie, land commissioner, was introduced in evidence, and the real question in the case is as to the effect of that deed. Did it reinvest the State with the title, or is it yet in C. P. Leslie, land commissioner, and his successors in office? A copy of that deed is set out in the "Case," and it is in the form of an indenture between Daniel Wadsworth and his wife, Sarah, of the one part, "and Charles P. Leslie, land commissioner, and his successor or successors in office, of the State of South Carolina of the other part." The granting part of the deed is as follows: "Unto the said Charles P. Leslie, land commissioner, his successor or successors, their heirs and assigns, forever;" the *habendum* is "to the proper use and behoof of the said party of the second part, his heirs and assigns forever," and the warranty is to the "said party of the second part, his heirs and assigns."

So that the question is, in whom is the title vested by this deed, under which alone the plaintiff claims? Or rather, whether

this deed vests the title in the State? for, unless it is in the State, the motion for non-suit was, unquestionably, properly granted. Without laying any stress upon the fact that the conveyance is to Leslie—not *as* land commissioner—but simply to him, land commissioner, which might be regarded as mere *descriptio personæ*, especially where, as in this case, there is an entire absence of any evidence tending to show that the property was bought with the money of the State, or for its use, we will proceed to consider the effect of the deed as if it had been made to him in proper form, as a public officer, for the use of the State.

For a proper understanding of this question, it will be necessary to take a brief review of the legislation of the State with respect to the office of land commissioner. By the act of 1869 (14 Stat., 275), as amended by act of 1870 (14 Stat., 385), the office of land commissioner was established, who should be appointed by and hold his office at the pleasure of the advisory board, composed of certain public officers therein designated, whose duty it should be to purchase lands in any portion of the State, and sell the same in small lots to actual settlers, under the general supervision of the advisory board. By the act of 1872 (15 Stat., 49) the office of land commissioner was abolished and his duties were devolved upon the secretary of State, to whom "all books and papers pertaining to the office" were required to be turned over. By the act of March, 1878 (16 Stat., 558), the secretary of State was required to take charge of all public property, the custody of which is not otherwise provided for by law, and hold the same, subject to the direction of the commissioners of the sinking fund; and this act specially provided that all lands purchased by the late land commissioner should be subject to the directions of the commissioners of the sinking fund. The act of December, 1878 (16 Stat., 811), amongst other things, authorizes the commissioners of the sinking fund to sell lands "purchased for the State by the land commissioner" on such terms and in such parcels as to them may seem best for the interests of the State. The provisions of the act of March, 1878, were incorporated in the General Statutes of 1882 as section 60, and by the act of 1883 (18 Stat., 380), that section was amended so as to provide that the secretary of State shall act as the agent of

the commissioners of the sinking fund in the lease and sale of all lands purchased by the late land commissioner.

From this review of the legislation of the State upon the subject, and from the terms of the deed under which the State claims in this case, it seems to us clear that there was no error on the part of the Circuit Judge in holding that the State, after showing that the title had passed out of her by the grant to Wadsworth, had failed to show, or to offer any evidence tending to show, that she had ever been reinvested with title. Whatever may have been the scheme of the legislation upon the subject—whether it was that the titles to lands purchased by the land commissioner should be made to the State, or that they should be made to that officer in order that he might resell them without waiting for express authority from the State, under the direction of the advisory board, as seemed to be one of the features of the scheme—the fact is apparent that, in this case, the title was not made to the State, but was made to C. P. Leslie, land commissioner, and his successors in office, and as there is nothing to show that the title has ever passed out of him, it must remain in his successor in office, whoever that may be.

There is much in the legislation above referred to that would seem to indicate that the intention of the legislature was that titles to land purchased by the land commissioner should be taken, not to the State, but to that officer ; for the manifest object was to resell the lands in small lots, and if the title had been taken to the State, no conveyance or resale could have been made, except by express authority of the State, expressed either in the form of a resolution or act of the general assembly. But if titles were taken in the name of the land commissioner, the main object—resales in small lots—would have been much facilitated, and due provision to control his action was made by the provision that the land commissioner should, "in all the duties imposed upon him by the provisions of this act, be governed by the instructions and advice" of the advisory board, composed of the governor, comptroller general, State treasurer, secretary of State, and attorney general. .

It is contended, however, that even if the legal title was vested in the land commissioner, yet it was only for the use of the State,

and that by virtue of the statute of uses the legal title passed to the State; and the case of *Lamar* v. *Simpson* (1 Rich. Eq., 71) is cited to sustain this view. In that case, however, the conveyance was made to one of the then solicitors—"B. J. Earle, his heirs and assigns, for the State of South Carolina"—and there was nothing whatever indicating that he had any duty to perform which rendered it necessary that the legal title should remain in him, and, of course, therefore, the statute of uses applied. It was nothing but a simple, naked trust. Here, however, the land commissioner, as well as his successor in office, had many and important duties to perform—for example, amongst other things, to divide up the lands purchased into small lots and resell the same, and lease those that could not be sold. It is very clear, therefore, that in this case the statute of uses could not operate. *Bristow* v. *McCall*, 16 S. C., 545; *Ayer* v. *Ritter*, 29 *Id.*, 135, and the cases there cited.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.