DICK v. HARBY.

1. WILL—POWER—EXECUTOR.—Where a testator, after devising certain property in trust, adds: "If occasion should arise, in the opinion of my executors, to sell any portion of my estate, they are hereby authorized to make such sale, and to reinvest the proceeds to such uses as are prescribed in relation to the property sold," a power coupled with a trust is created, and the surviving executor may sell the property for reinvestment. Cases considered.

2. IBID.—IBID.—An intent to execute a power will be inferred, where there is a reference in the will to the power and to the property on which it is to be executed.

Before BUCHANAN, J., Sumter, December, 1896. Affirmed.

Action by William Edward Dick against Adeline W.

Harby, for specific performance of a contract for purchase of a tract of land. The Circuit decree is as follows:

A case agreed between the parties above named, without action, dated the 1st day of December, 1896, and duly verified, has been submitted to this Court, and the arguments of counsel thereon have been duly heard. The first question submitted to the Court is, as to the authority of the sole surviving executor, Gabriel Wesley Bradford, to exercise the power of sale conferred under the eleventh clause of testator's will. It will be observed that although the testator by the provisions of his will seemed to contemplate the possible necessity of sales, in whole or in part, of his estate mentioned in the sixth clause, for reinvestments in other property, preparatory to the final partition and division of the same amongst the remaindermen, yet he never conferred any power of sale upon the trustee, John S. Bradford, appointed under said sixth clause; but, on the contrary, that he reserved such power and annexed the same to the office of his executors, rather than confer the same upon any individual, *nominatim*. From an inspection of the provisions of this will, so carefully prepared, it may be fairly assumed that the testator was not *inops conselii*, and hence that he conferred this power upon the *office* of executor rather than upon the individual. He may well be regarded as having considered that probably one or both of his executors might renounce the office, or die, before final partition and settlement of his estate, or that only one of his executors might be alive to execute its provisions, or that the appointment of an administrator *cum testamento annexo* might become necessary. The testator was, therefore, careful not to designate the executors by *name*, when conferring this power of sale in the eleventh clause. He conferred it upon the *office*. In this respect this will is almost identical in its language with that construed in the like case of *Smith* v. *Winn, infra*. The question, then, is, what was the nature of this power, and did it survive in G. W. Bradford upon the death of his coexecutor? In *Reeves*

v. *Tappan*, 21 S. C., 9, powers are classified, and are there divided into three kinds, viz: "1. A naked common law power, like a power given to an attorney or agent to do any act. 2. A power coupled with an interest in the donee. 3. A power coupled with a trust (the trust being the executorship in that case), and conferred upon the office of executor so as to enable the party filling that office, whoever he might be, to properly discharge its duties and functions." In the case at bar the power was to sell and reinvest, awaiting final distribution, and preparing for that purpose. In *Smith* v. *Winn*, 27 S. C., 591, it is said: "The test of such a power being coupled with a trust is that a third party has such an interest as will enable him to call on the executors to execute the trust." Can it be doubted here that the life tenant or remaindermen had such an interest in testator's estate that the Court of Equity, in a proper case, would enforce the execution of the power of sale, even against the opinion of the executors to the contrary? Many circumstances readily suggest themselves, where such change in the condition of the estate under this will might not only be desirable but necessary, and yet such change might be obstructed by the abuse of the executor's dis-cretion or possibly his unreasoning obstinacy. If, therefore, the power here in question was a *power coupled with a trust*, then all the authorities agree in holding "that it survives, and may be executed by one executor, where the others die or renounce the office." *Smith* v. *Winn, supra; Reeves* v. *Tappan, supra; Bredenburg* v. *Bardin*, 36 S. C., 197; *DeSaussure* v. *Lyons*, 9 S. C., 492; *Robinson* v. *Ostendorf*, 38 S. C., 66; 1 Sugden on Powers, secs. 144–146; 2 Williams on Executors, 814–816; 2 Washburn on Real Property, 715–718; 18 Amer. & Eng. Enc. of Law, 961. In Sugden on Powers, *supra*, it is said: "Where authority is given to executors, and the will does not *expressly* point to a joint exercise of it, even a single surviving executor may exercise it; and the liberality of modern times will probably incline the courts to hold, that in every case

where the power is given to *executors*, as the office survives so may the power." Where the power is given to the executors *virtute officii*, it none the less survives because it is discretionary; and notwithstanding this discretion equity will enforce such powers and trusts. *Davis* v. *Christian*, 15 Gratt. (Va.), 11; *Bradford* v. *Monks*, 132 Mass., 405; 18 Am. & Eng. Enc., *supra*.

The only case which has been called to my attention which may be regarded as sustaining a contrary doctrine is the case of *Mallett* v. *Smith*, 6 Rich Eq., 12. A careful examination of this case will show that it does not militate against the principles hereinbefore announced, but rather sustains them. That case, too, has been twice reviewed by our Court in recent years. In *Smith* v. *Winn*, *supra*, in the Circuit decree of Judge Fraser, which was affirmed on appeal, it is said: "There the power was one given in '*special trust and confidence*,' and in no way connected with the executorship. It was a power, as I remember, to appoint *to whom*, in certain contingencies, the estate should go, and not a mere power to administer, as to pay debts, sell, and invest, all of which could be enforced or even exercised by the courts." * * * "The power given in the will in *Mallett* v. *Smith* is one which no court could enforce or exercise any authority to compel the depositary of the power to execute otherwise than in some way agreeable to his own will and discretion." So, too, in *DeSaussure* v. *Lyon*, *supra*, it is there said in reference to the same case of *Mallett* v. *Smith*: "The question was whether power conferred on executors to revoke legacies, where the object of that power was to prevent legatees from disputing certain dispositions made for slaves in contravention of the statutes, could be exercised when only one of the executors named qualified. The decision was put upon the ground that such authority must be regarded as conferring a strictly personal power, and as such did not follow or conform to the office of executors." I conclude, therefore, that both at the common law and under our statutes (see *Breeden-*

*burg* v. *Bardin*, *supra*), the power under the will of the testator, Robert Bradford, survived in Gabriel Wesley Bradford, and that he alone, after the death of his coexecutor, might lawfully execute the same.

The second question submitted to the Court is whether the deed in question here was a valid execution of the power of sale by the executor, although he did not therein refer to the power under said will. I think this question is quite free from doubt. In *Bilderback* v. *Boyce*, 14 S. C., 538, all the authorities were reviewed, and the rule was stated to be as follows: "The Court would infer an intent to execute a power only in three cases: *First*, where there was some reference in the will or other instrument to the power; *second*, or reference to the property which is the subject on which it is to be executed; *third*, or where the provision in the will (or other instrument) would have no operation except as an execution of the power." Now, in the case at bar, whilst the executor, Gabriel Wesley Bradford, in the deed in question did not "refer to the power," and hence it does not come within the first class of cases above mentioned, yet the subject of the deed was a part of the land whereon testator had resided, as mentioned in his will, and which the executors were authorized to sell; and, furthermore, the deed would be wholly inoperative unless referred to the power, because the said G. W. Bradford had no personal or individual interest in this land, his only connection with it being as executor of said will.

In 4 Kent's Com., 335, in treating of the subject, "*Power need not be referred to*," the author says: "The power may be executed without reciting it or even referring to it, providing the act shows that the donee had in view the subject of the power. * * * The general rule of construction, both as to deeds and wills, is, that if there be an interest and a power existing together in the same person, over the same subject, and an act be done without a particular reference to the power, it will be applied to the interest and not to the power. If there be any legal interest on which the

deed can attach, it will not execute a power.  If an act will work two ways, the one by an interest and the other by a power, and the act be indifferent, the law will attribute it to the interest and not to the authority.  * * *  If the will be made without any reference to the power, it operates as an appointment under the power, provided it cannot have operation without the power." I am bound to hold, therefore, that the deed here must be referred to the power, and is a valid execution of it, for otherwise it can have no effect or operation at all, and that cannot be supposed to have been the intention of the grantor.  In view of my rulings upon the two questions above stated, the third question becomes unimportant.  I would add, however, that the long possession of this property by the grantee of the executor, Mrs. Brown, and her heirs and alienees, now nearly forty years last past, and the character of that possession, and the fact that trustees, in whom the legal title was vested (subject only to a defeasance by the execution of a power of sale by the executors), having never sued or disturbed the possession of these parties, the presumptions of the law from such long possession, and the statute of limitations, have given the plaintiff such good marketable title, that for this reason, also, the defendant should be required to comply with her contract of purchase.

The defendant appeals on the following exceptions:

First. Because his Honor erred, it is respectfully submitted, in holding that the power of sale conferred by the testator, Robert Bradford, upon his executors, by the eleventh clause of his will, survived either at the common law or under the statute in Gabriel Wesley Bradford, the surviving executor, upon the death of his coexecutor, John S. Bradford, and that such power could be legally executed by said sole surviving executor.

Second. Because his Honor erred, it is respectfully submitted, in holding that the deed of Gabriel Wesley Brad-

ford to Mrs. Sarah Brown was a legal and valid execution of such power of sale.

Third. Because his Honor erred, it is respectfully submitted, in holding that the plaintiff had also acquired a good marketable title to the premises in question, by reason of the presumptions of the law, arising from long possession in Mrs. Brown, her heirs and alienees, and by adverse possession and the statute of limitations.

Fourth. Because his Honor erred, it is respectfully submitted, in directing the defendant to specifically perform the contract of purchase set out in the case.

*Mr. R. Dozier,* for appellant, cites: *On first question:* 6 Rich. Eq., 12; 9 S. C., 492.

*Messrs. Lee & Moise,* contra, cite: *On first question, in addition to authorities cited by Circuit Judge:* 33 Ala., 494; 74 *Ibid.,* 354; 10 Pet. U. S., 532; 14 Johns, 527; 2 Dana, 74; 11 Gray, 277; 102 Mass., 268; 104 Mass., 283; 2 Johns Ch., 252; 15 Johns, 346. The other questions are submitted on authorities cited by Circuit Judge.

March 20, 1897. The opinion of the Court was delivered by

MR. JUSTICE POPE. Judge Buchanan heard a controversy without action in the Court of Common Pleas for Sumter County, in this State, on the 1st day of December, 1896. The object of the action was to compel the defendant to take the title, to the land described hereinafter, tendered to the defendant by the plaintiff, and which title the defendant had declined to take, because she alleged it was not a good marketable title. The following agreement sets out the facts to be used at the hearing: "On the 20th day of November, 1896, the plaintiff and the defendant entered into an agreement in writing, whereby the plaintiff contracted and agreed to sell and convey to her (the defendant), by proper deed, with covenant of general warranty, all that piece, parcel or tract of land, situate and being in the county and State aforesaid, commonly known as the Dick place,

containing ninty-nine acres, more or less, * * * at the price
of $2,000. * * * That the plaintiff duly tendered to the
defendant his deed to said premises, containing full cove-
nants of general warranty, pursuant to his said agrement,
but the defendant refuses to accept said deed, or comply
with the terms of said contract on her part, upon the ground
that the same does not convey a good marketable title to
the said land, because she claims that said premises are af-
fected by the limitations of the will of Robert Bradford,
deceased, and the title rendered invalid by reason thereof.
Robert Bradford departed this life in the year 1850, leaving
of force his last will and testament, which was duly admitted
to probate in the proper office for said county. The clauses
of said will affecting this controversy are as follows: 'Sixth.
I give and bequeath to my son, John S. Bradford, in trust,
and to and for the sole and separate use of my daughter,
Mary Ann Elizabeth Bradford, during her life, all the lands
whereon I now live, and all my real estate other than that
hereinbefore devised to her brother; also, the other half of
all my personal estate of every description whatever; and
after her death, I devise and bequeath the said real and
personal estate in this clause mentioned to her issue living
at her death. Tenth. I constitute and appoint my son,
John S. Bradford, and my son-in-law, Gabriel Wesley Brad-
ford, executors of this my last will and testament. Eleventh.
If occasion should arise in the opinion of my executors to
sell any portion of my estate, they are hereby authorized
to make such sale, and to reinvest the proceeds to such uses
as are prescribed in relation to the property sold.' Testa-
tor also provided for cross-remainders amongst the issue of
his said son and daughter, and if both should die without
issue, then over, with directions to his executors for the
ultimate partition and division of his estate. Both execu-
tors duly qualified, and entered upon the discharge of their
duties. Gabriel Wesley Bradford, one of the executors,
was also the son-in-law of the testator, the husband of Mrs.
Mary Ann Elizabeth Bradford, mentioned in the sixth clause

of the will. John S. Bradford, the trustee under the sixth clause, and one of the qualified executors, died in the year 1854. He left surviving him a son, John R. Bradford, his heir at the common law, who died about the year 1890. In 1871, by proper proceedings in the Court of Common Pleas for Sumter County, James Henry Dingle was duly appointed trustee under said will in the place of the deceased trustee. Mr. Dingle died in the year 1887. In February, 1858, the surviving executor, Gabriel Wesley Bradford, in consideration of the sum of $1,000, conveyed the above described premises to one Mrs. Sarah Brown in fee simple. In this deed no reference is made to the power of sale contained in said will, nor did Gabriel Wesley Bradford sign himself as executor of the said will. This deed was duly recorded. The property was a part of the lands on which testator resided, mentioned in his will. Upon her purchase, Mrs. Brown entered into possession of the premises, and remained so until she died, in the year 1869, and after her death, her heirs remained in possession until March, 1875, when they conveyed to John S. Richardson, also in fee simple. In 1879, John S. Richardson conveyed this land to the Rev. James McDowell, trustee for Mrs. Robert J. Dick and her children, the plaintiff being one of them. The plaintiff has recently purchased all interest under this trust deed, and now owns the entire estate. All the aforesaid parties used and occupied the premises adversely to all parties. Gabriel Wesley Bradford, the surviving executor, died about the year 1890. Mrs. Mary Ann Bradford, mentioned in the sixth clause of the will of her father, Robert Bradford, died in August, 1892, leaving numerous children and grandchildren. None of the admissions hereinafter contained are in anywise to affect either party, or to be regarded as made, except for the purpose of this submission of this controversy."

The questions submitted to the Court upon this case are as follows: "1. Did the power of sale under the eleventh clause of the will of Robert Bradford survive in the execu-

tor, Gabriel Wesley Bradford, upon the death of his coexecutor, John S. Bradford, and could such surviving executor legally execute such power? 2. Was the deed of Gabriel Wesley Bradford to Mrs. Sarah Brown in February, 1858, a valid execution of such power? 3. If the foregoing questions are determined in the negative, then has the plaintiff, William Edward Dick, a good marketable title to said premises by adverse possession, and under the statute of limitations and the presumption arising from the connected possessions of his grantors for upwards of twenty years? If the first and second questions together, or the third question alone, is determined in the affirmative, then the plaintiff is to have judgment against the defendant for the specific performance of her contract to purchase. If all the foregoing questions are determined in the negative, then judgment is to be rendered for the defendant. William Edward Dick, Adeline W. Harby; Lee & Moise, plaintiffs' attorneys; R. Dozier, defendant's attorney."

The decree of Judge Buchanan was filed on the 11th December, 1896, wherein he answered the three questions in the affirmative, and decreed specific performance by the defendant of her contract. From this decree Mrs. Harby has appealed. Let the decree and the exceptions thereto be reported.

First. As to the first exception, involving as it does the exercise of the power of sale of the trust property of Mrs. Mary Ann Elizabeth Bradford by Gabriel Wesley Bradford, as the surviving executor of the last will of Robert Bradford, deceased. Robert Bradford seems to have had but two children, his son, John S. Bradford, and a daughter, Mrs. Mary Ann Elizabeth Bradford, who had intermarried with Gabriel Wesley Bradford, and this testator evidently desired that his estate, both real and personal, should not only be enjoyed in equal parts by his two children, John S. and Mary A. E. Bradford, but that such property should remain for their issue living at the death of each one; and, further, that in the event either

John S. or Mary A. E. Bradford should die without issue
living at the death of either, such property, real and per-
sonal, should go to the issue of the survivor of them, and,
indeed, even beyond this. Further to prevent the possi-
bility of the marital right of the husband of Mary Ann
Elizabeth Bradford attaching to her moiety of his estate,
the testator, in the sixth clause, appointed John S. Bradford
her trustee. And, further, in view of the fact that all the
property he had provided for his two children, with such
enduring trusts therein, might at some time need a change
of investment, in the eleventh clause of his will, the testator
provided that "if occasion should arise, in the opinion of
my executors, to sell any portion of my estate, they are
hereby authorized to make such sale, and reinvest the pro-
ceeds to such uses as are prescribed in relation to the prop-
erty sold." The language here used by the testator clearly
evinces his purpose, that in the event it became desirable
to sell any of the trust property of either his son or his
daughter, it might be done, if deemed best by his executors,
provided that the proceeds of such sale when made should
be reinvested in other property, to be subjected to like trusts
as that the testator had devised and bequeathed. It seems
to be admitted, that if John S. Bradford had united with
Gabriel Wesley Bradford, his coexecutor, in the sale to Mrs.
Sarah Brown of the land in question, the sale would have
been valid; but it is earnestly insisted that John S. Brad-
ford having died in 1854, leaving Gabriel Wesley Bradford
as the surviving executor, that the latter, *as such surviving
executor*, could not execute the power. It must be borne
in mind, that the sixth clause of this will, while it appoints
John S. Bradford trustee for his sister, Mrs. Mary A. E.
Bradford, simply places the legal title to her property in
him as such trustee; it is absolutely free of any power of
control over such property by him as such trustee. As the
Circuit Judge well observes, the terms of this will clearly
show that the testator was not *inops concelii* in its prepara-
tion. The eleventh clause was evidently provided by the

testator for a wise purpose, viz: to create a power to make changes in such trust property, and this power was vested in the office of the executors of his will, to be used at their discretion as executors; for it must always be kept in mind, that in a clause of the will just after the eleventh, the testator made the direction that his *executors* should make ultimate partition and division of his estate. It would seem, therefore, that the intention of the testator was that his son, John S. Bradford, should hold the legal title to the property left in trust for Mrs. Mary A. E. Bradford, but the power to change the investment thereof should be in his executors, who, also, should be clothed with the power to carry out the division or partition thereof amongst the issue living at the death of either John S. or Mary A. E. Bradford. In the nature of things, the two executors might not both live to carry out together these trusts; the testator makes no special provision for any such contingency. It must be assumed that he knew that the law clothed the surviving executor with all the power created in the will, unless the testator directed otherwise. Now, can the language in the eleventh clause, "if occasion should arise, *in the opinion of my executors* (italics ours), &c.," be regarded as a limitation of this power to *both* John S. and Gabriel Wesley Bradford, so that the survivor could not exercise such power? We think our own decisions have answered this question, and that such power can be exercised legally by the survivor of such executors.

In *DeSaussure* v. *Lyons,* 9 S. C., 492, a testator had named six individuals as executors of his will, and had used the terms "trustees" and "executors" in connection with certain powers to sell real estate. Only three persons of the six who were named as "executors" and "trustees," although the other three were alive, qualified, and having made a sale of some of testator's lands in this State, the title was objected to, on the ground that only three of the six persons had exercised the power of such sale, and hence that the deed was invalid. The language of the will in

that case was: "All the rest and residue and remainder of my estate, real and personal, * * * to my friends, Ambrose C. Kingsland, of New York, merchant; Cornelius K. Sutton, of the same place, merchant; Edward S. Hamilton, of the same place, merchant; my sister, Ursula Schmidt; my wife, Mary Elizabeth Schmidt; and my daughter, Ella D. Schmidt, my executors and executrix, as hereinafter named, and to the survivors and survivor of them, upon this special trust and confidence, nevertheless—that is to say, that they, my said trustees, or the survivors or survivor of them, * .* * do and shall, at such time or times after my decease as they may think advantageous to my estate, sell and dispose of, on such terms and conditions as they may think fit, all of such real and personal estate." Chief Justice Willard held that the power to sell attached to the office, saying: "It is clear that it is necessary to hold the trusts as incident to the office of executor in order to carry out the purposes of the will." It will be observed that in the case cited the sale was to be made as in their opinion, as executors, it was deemed best and most advantageous for the estate of their testator.

The case of *Reeves* v. *Tappan*, 21 S. C., 1. The question in this case was whether a power created under the will of Robert N. Lewis in his executor, Daniel B. Lewis, could be validly executed by Mrs. Sarah Lewis, as the executrix of the will of Daniel B. Lewis; or, in other words, whether an executor of an executor, prior to the act of our General Assembly, passed in the year 1880, making a change in the law, could execute a power of the first executor. Amongst other things, this Court held: "Powers like this may be divided into three classes: 1. A naked common law power, like a power given to an attorney or agent to do any act. 2. A power, coupled with an interest in the donor. And, 3. A power which, when detached from the other parts of the will in which it is found conferred, would seem to be a mere naked power, but yet, when the whole will is considered, it appears that it was conferred to satisfy the whole intent

thereof, and was intended to enable the executor to fully exercise his executorial duties. In the first class, no one but the party named can execute the power, and upon his death it expires. In the other two, the power survives, and is transmissible; and when vested in an executor, may be exercised by his executor." "We regard the power in this case * * * as a *power coupled with a trust, the trust being the executorship, and it was conferred upon the office of executor, so as to enable the party filling the office, whoever he might be, to property discharge its functions and duties*" (italics ours).

In the case of *Smith* v. *Winn*, 27 S, C., 591, it was developed that in the will of William Long he had nominated three persons as the executors of his will, of whom only one, his widow, qualified as executrix. The contest was over this clause of testator's will: "It is my will and desire and I do hereby direct the whole" (that is, the residue of his estate) "shall be appraised and divided by my executors, hereinafter named, into two equal parts—one of which, and that one which my wife shall choose or select, I give, devise, and bequeath to my said wife," &c. Judge Kershaw, as the organ of this Court, said: "The principal question of law raised by the appeal concerns the power of the executrix to make the appraisement and partition of the estate, now sought to be set aside. Had she authority alone to execute the power conferred upon the executors to appraise and divide the estate? If it was a mere naked authority given to several persons, all must act. 4 Kent, 325; *Mallet* v. *Smith*, 6 Rich. Eq., 22; 60 A. D., 107. So, if it indicates a personal confidence in the persons named, and the word executors is merely a designation of title. *Mallet* v. *Smith, supra.* The ground of the power being personal confidence, it is *prima facie* limited to the persons named, and will not survive without express words. *Cole* v. *Wade*, 16 Ves., 27. If, however, the power be conferred upon executors as such without naming those holding that office, and there is nothing to show that it is personal trust,

34—48

530                    DICK v. HARBY.

the execution of the power appertains to the office of exec-
utor, and may be performed by the person holding the posi-
tion, if the execution of the power be necessary in order to
carry into effect the will of the testator. *Jackson* v. *Ferris*,
15 Johns, 347; *DeSaussure* v. *Lyon*, 9 S. C., 496; *Forbes* v.
*Peacock*, 11 Mees & W., 636; Sugden on Powers, 139. If it
be a power coupled with a trust, it survives and may be ex-
ecuted by one executor when the others die or renounce the
office. The test of such power being coupled with a trust,
is that a third party has such an interest as will enable him
to call on an executor to execute the trust. *Jackson v.
Given*, 16 Johns, 168; *Franklin* v. *Osgood*, 14 Johns, 527;
*Gaines Cases*, 15; *Taylor* v. *Benham*, 5 Howard, 266; *Peter*
v. *Beverly*, 10 Peters, 532. It cannot be doubted that the
power in this case was one coupled with a trust, and to be
executed by the executor, *virtute officio*, and necessary to
be put into exercise, in order to execute the provisions of
the will. Hence, it was properly executed by the only
person who qualified as executor."

In the case of *Bredenburg* v. *Bardin*, 36 S. C., 197, this
Court held that an executrix who survived her coexecutor
could legally make a sale of realty of her testator whose
will had directed that his executors might sell lands for re-
investment. Justice McGowan delivered the opinion of the
Court, stating: "The power was coupled with a trust and
survived," citing *Smith* v. *Winn*, *supra*, and *Reeves* v. *Tap-
pan*, *supra*, in support of his conclusion.

In the case of *Robinson* v. *Ostendorff*, 38 S. C., 66, it was
held that when a testator gave his executors power to sell
lands for reinvestment, and upon the death of all the exec-
utors, an administrator *cum testamento annexo* having been
appointed, a sale of land made by the latter was a valid ex-
ercise of the power created under the will to executors to sell
for reinvestment, as they may deem expedient and proper.

But it is contended that the case of *Mallet* v. *Smith*, 6
Rich. Eq., 12, is an obstacle in the way of exercise of this
power to sell for reinvestment by the surviving executor,

Gabriel Wesley Bradford.   The testator, William Hacket, by the fourth clause of his will had made provision for certain negro slaves; by the tenth clause he had made a bequest of $2,000 to his sister, Jennie Mallet, and in the fifteenth clause he had provided as follows: "Fifteenth. Should any of the legatees under this my will complain or express dissatisfaction with any disposition of my estate herein made, I hereby direct and empower my executors in their discretion to revoke any and all legacies such complaining legatee or legatees might have been entitled to, and to dispose of the same between my other legatees as to my executors may seem just and proper."   Three persons were named as executors, of whom one alone qualified.   The sister named in the tenth clause objected to the provisions in the fourth clause of the will being carried out, as being directly violative of the act of our General Assembly, passed in 1841, to prevent slaves being manumitted and left in this State, &c., by denying any validity to any trusts created for that purpose.   Therefore, the only qualified executor proceeded to take from the sister her legacy, &c.   The Court of Appeals in Chancery held that the provisions of the will created a joint power in the three executors appointed by the testator, and their joint concurrence would be necessary to execute the power.   This decision, as explained in the case of *DeSaussure* v. *Lyon*, *supra*, and in *Smith* v. *Winn*, *supra*, merely declared that when there was a personal duty or confidence conferred upon two or more executors, a concurrence of all named as such executors was necessary to execute such *personal* duty or confidence; a moment's reflection will convince any one that to empower three persons to virtually make a new will for a man according to "their discretion" was *personal*, with a vengeance.

In the case at bar, the sale is not to be made by the executors to change the will; *the trusts are to be strictly preserved.*   We think, therefore, the Circuit Judge committed no error, as is suggested in the first exception.

Second.   Was the deed executed by Gabriel Wesley Brad-

ford, without naming himself as executor, or otherwise referring to the will of Robert Bradford, an execution of the power to sell, as set out in the eleventh clause of the testator's will? It is certain that Gabriel Wesley Bradford had no connection with this land except that derived under the will as its executor. Thirty-eight years have passed since the deed was made by him to Mrs. Sarah Brown, who at once thereafter took possession thereof, and ever since the year 1858, Mrs. Mary A. E. Bradford, her trustee or her issue, have been out of its possession. In the case cited in the Circuit decree, to wit: that of *Bilderback* v. *Boyce*, 14 S. C., 528, this Court, following the English cases on this subject, declared: "In that case" (*Doe* d. *Nowell* v. *Roake*, 19 E. C. L., 497), "it was solemnly decided that the Court would infer an intent to execute a power only in three cases: first, when there was some reference in the will or other instrument to the power; second, or reference to the property which is the subject on which it is to be executed; third, or where the provision in the will would have no operation except as an execution of the power." As we have before remarked, the grantor, Gabriel Wesley Bradford, was in the will, when the power was created, named as the executor by whom the power was to be executed, and the property upon which the power was to operate was named in said will. We think the Circuit Judge committed no error here.

Third. We do not feel that we are called upon to consider the third question. Our previous findings or conclusions of law make this third exception present an abstract question. We have, time and time again, announced that we will not consider abstract questions of law.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed, and the cause is remanded to the Circuit Court, to carry out the judgment of that Court.