## 10712.

### BROOME *ET AL.* v. MORDECAI *ET AL.*

(108 S. E. 407)

1. TRUSTS—FOREIGN TRUSTEE NOT LIABLE FOR DEFAULT OF RESIDENT TRUSTEE.—Where the corpus of a trust was managed by a resident trustee, and had never been in the control of foreign trustee whose only duty was to forward the income to the cestui que trustent after the resident trustee sent it to him, and who, on failure of the resident trustee to send the income, gave prompt notice of the failure, the foreign trustee is not liable for default of the resident trustee.

2. TRUSTS—SURETY ON BOND OF TRUSTEE HELD LIABLE FOR DEFAULT.—Where surety for trustee did not avail itself of an order of the Court allowing it to secure a joint deposit in bank of funds of the trust estate in the joint names of itself and trustees, and where the surety, after being notified of a default of one trustee by another trustee, brought the matter to the attention of the defaulting trustee, and so enabled him to escape, and where it had knowledge of the nature of the investment, which would demand prompt investigation of any default, it is liable on the bond for the default.

Before MEMMINGER, J., Charleston, August, 1920. Reversed as to Hawksford: Affirmed as to the Bonding Company.

Action by Clarissa Broome (formerly Murray) and James Ancrum Murray against T. Moultrie Mordecai and Cyril V. Hawksford, Trustees, and American Bonding Co. of Baltimore. From judgment for plaintiffs the defendants Hawksford and Bonding Co. appeal.

The following is the report of F. K. Myers, Master:

On the 11th day of May, 1888, William James Murray, reciting his permanent residence at Saint Aubins, in the Island of Jersey, but then temporarily residing at Fournies Nord, in the Republic of France, executed and delivered an indenture, or "postnuptial agreement," assigning and setting over $125,000 of funds or property then held for him by Henry E. Young, as guardian to the said Henry E. Young, of Charleston, S. C., and Frances Hawksford, of St. Helier, in the Island of Jersey, Kingdom of Great Britain, as trustees, on the terms and for the purposes set out in the said agreement, a copy of which is attached to the complaint herein as Exhibit A.

In proceedings in this Court entitled James Ancrum Murray, by guardian ad litem, v. Clarissa Murray et al., referred to at length in the pleadings, necessary or expedient changes of trustees were made from time to time as authorized by the said indenture. By decree in said cause dated November 24, 1905, the defendants herein, T. Moultrie Mordecai and Cyril V. Hawksford, were appointed trustees, Mordecai being a resident of Charleston, and Hawksford, a son of the original trustee, Francis Hawksford, a resident of the Isle of Jersey. Mordecai and Francis Hawksford, whose death on the ———— day of ————, 1905, made a new appointment necessary, had been holding as trustees under bond of $100,000, with American Bonding & Trust Company of

Baltimore City, as surety, at this time, by amendment of charter, known as American Bonding Company of Baltimore.

This decree of November 24, 1905, provides for the release of both trustees, Mordecai and Francis Hawksford, and their bond, upon delivery of the trust estate to the new trustees, Mordecai and Cyril Hawksford, evidenced by exhibit to the clerk of this Court of receipt of T. Moultrie Mordecai, resident trustee, for himself and Cyril V. Hawksford, for such assets and property; further orders that the new trustees, before entering upon their duties as such, shall give and keep in force a bond in the sum of $100,000, with surety to be approved by the said Master (then G. H. Sass, Esq.), conditioned for faithful performance by the trustees of their duties as prescribed by the terms of the decree; and further providing: "That as protection for said surety all the securities and properties of the estate shall be placed in the joint name of the trustees and such surety, or its attorney in fact duly authorized," etc. Bond was executed by the trustees, and by the American Bonding Company of Baltimore, as surety, approved by the Master, and was delivered to the clerk, the required receipt exhibited by Mordecai, and the bond of Mordecai and Francis Hawksford, as trustees, and the American Bonding & Trust Company of Baltimore City as surety, was thereupon released and delivered up by the said clerk. Mordecai, for himself and Hawksford, vouched the accounts and securities of the estate before the master from time to time, up to the 30th day of December, 1916, the date of the last accounting.

Clarissa Broome, (formerly Murray) the life beneficiary, and James Ancrum Murray, remainderman, filed their complaint in the instant action on the 7th day of February, 1919, and thereon an order of default as to the defendant Mordecai was entered, and the cause referred to the undersigned Master July 2, 1919.

I have held references, the minutes of which, together
with exhibits and affidavits offered, are herewith filed. I
find that T. Moultrie Mordecai has absconded, and all efforts
to locate the negotiable assets of the trust estate have been
unavailing. The extent of the devastavit can only be as-
certained upon a careful audit of the trustees' accounts, and
of certain deeds and mortgages found in his safe, and turned
over to me and now in my possession. The defendant
Hawksford alleges in his answer that no part of the assets
of the estate have ever been in his possession, and so I find.
No further accounting by the trustees can be hoped for.
Pending the necessary audit, I am in this report considering
the question of liability of the trustees and the surety, and
will file a special report of audit hereafter. The last ac-
count, December, 1916, shows negotiable assets of $70,000
in round figures, consisting of city of Charleston bonds.

The defendant American Bonding Company of Balti-
more denies all liability under the several defenses set up in
its answer, and makes a tender of $1,900, the amount of
premiums received on the bond with interest.

The appointment of Mordecai and Cyril Hawksford as
trustees was made by this Court, having jurisdiction of the
parties and of the subject-matter, and may be said to have
been made for, by, and with the consent of Clarissa Murray,
if not directly by her, as a strict construction of the terms of
the indenture might require. Her failure to appoint did not
affect the right and duty of the Court. The case of *Tinsley
v. Kirby,* 17 S. C. 3, relied on, has no application, inasmuch
as the bond there sued on was given for an office to which
no appointment could be made.

The contention that the bond is and was void because
signed by T. Moultrie Mordecai as attorney in fact cannot
avail, specific authority to Mordecai having been shown.
The position of this defendant as successor to the American
Bonding & Trust Company of Baltimore City is interesting

in connection with the record as it appears in the case of
*Murray v. Murray*, and the attack on the validity of the
bond. The giving of a new bond by Mordecai and Cyril
Hawksford was prerequisite to qualification. The bonding
company was then surety on bond of Mordecai and Francis
Hawksford in the sum of $100,000, conditioned to account
for this fund. Liability ceased under the old bond and at-
tached under the new bond immediately upon compliance
by the reappointed trustee, Mordecai, and the new trustee,
Cyril Hawksford, with this and other provisions of the de-
cree, and specifically the exhibit to the clerk of receipt of
Mordecai, for himself and his newly appointed cotrustee,
showing delivery of the assets of the estate to them. There
was no change in the premiums regularly paid to the surety
company out of the funds of the trust estate. Therefore, if
no validity ever attached to the bond so given for the present
trustees, there was no release of the prior bond given for
Mordecai and Francis Hawksford as trustees, and it would
be unnecessary to consider any question of liability of Cyril
V. Hawksford for the devastavit of Mordecai, his cotrustee.
Mordecai, as surviving trustee, in possession of the assets
of the estate, either made the transfer authorized and
directed by the decree of November 24, 1906, to Mordecai
and Cyril Hawksford as trustees, with American Bonding
Company of Baltimore as surety on the bond given as re-
quired by said decree, or he is still liable to account as trus-
tee under the bond then in force, continued in force by its
own terms and the acceptance of premiums. I am of the
opinion that the bond so given was valid, and that liability
of the surety thereunder accrued immediately upon the
transfer which was sufficiently evidenced by the receipt of
Mordecai for himself and Hawksford exhibited to the
Clerk of Court.

By its allegations in the third and fourth paragraphs of
its answer, the bonding company seeks to avoid liability on

the ground that failure to deliver any part of the estate to it under the terms of the decree, coupled with the knowledge of plaintiffs as to the custody and manner of handling the estate, constituted a fraud in the procurement of the bond, and that defendant, having received no part of the estate, had no duty to perform, with particular reference to the holding of the assets of the estate in the joint names of the trustees and the surety. This provision was recommended by the Master and inserted in the decree "for the protection of the surety," etc. It could be no more than a direction to or requirement of the trustees, the principals on the bond. If not waived by the surety, and the trustees failed to comply with this requirement of the Court, it was a failure on their part to well and truly perform their duties as trustees, and for this the bonding company, as surety, is liable.

It is not necessary to discuss in this connection the power delegated to Mordecai as attorney in fact of the bonding company, because I find as matter of fact that, while it may be argued that the bonding company had knowledge of and acquiesced in the holding by Mordecai both as trustee and as their attorney in fact, there never was any holding of the estate in the joint names of the trustees and the bonding company. I find as matter of fact that this "protection" was waived by the surety. That it was not complied with was known to the agent of the bonding company (Mordecai), through whose agency the bond was issued, and by whom, as attorney in fact for the bonding company, the undertaking was assumed. It was known to their traveling auditor or representative, a Mr. Bode, who is shown by the testimony to have checked over at least a portion of the assets of the estate produced by and in the possession and sole control of Mordecai, and to have ascertained their negotiable nature. The fact that Mordecai's possession and sole control of these negotiable assets of the estate was also disclosed from time to time by his accountings for him-

self and Hawksford, and his exhibit to me  on accounting, of the securities so held, when it was obvious from  the accounts themselves, showing remittance  of income  to Cyril Hawksford in England, that Cyril Hawksford was not in a position to exercise with Mordecai joint custody and control of such funds and securities.   Mordecai was the agent of the bonding company, resident  in Charleston;  his. knowledge was their knowledge.

The situation between the bonding  company  and Mordecai was clearly this :  The bonding company had implicit confidence in Mordecai, authorized and approved  the bond in question, relied upon his stated accounting,  and accepted the annual premium.   It will be held strictly  to that which it undertook to do for a money consideration, viz. :  Hold the parties in interest harmless from any default of Mordecai as trustee.

Paragraph 5 of the answer of the bonding company denies liability on the ground that the original indenture was void under Section 3672, S. C. Revision of 1912.   This is a portion of the statute 3, Henry VII, c. 4, for the protection of creditors, and it will be presumed to have been enacted by the Legislature of South Carolina for that purpose.   I find that in no aspect has this statute any application to the facts in this case.   Certainly a surety of trustees appointed by the Court, under bond given to the Court, cannot  avail  itself of its provisions for the purpose of avoiding  liability after default.

With these points disposed of, the reliance of the bonding company seems to be in its position taken in' argument that the defendant, Hawksford, is liable for the devastavit of his cotrustee, Mordecai.   I find it to be the general  rule that a cotrustee is held to the exercise of prudence,  care, and diligence, and is held for such losses only as occur as a result of his acts or omissions.   When charged  with  responsibility for losses, the Court will be guided in  its conclusion by the

attendant circumstances.   *Crane-Boylston Co. v. Moses,* 13
.S. C. 569; *Mayer v. Mordecai,* 1 S. C. 394, 7 Am. Rep. 26;
*Glover v. Glover's Ex'rs.,* McMul. Eq., 153.

The indenture creating the trust named Young, of
Charleston, and Francis Hawksford, of the Island of
Jersey, as trustees, with provision for the appointment of
new trustees, never less than two; that the trust fund might
be invested in either American or English securities, and
might be invested jointly in such trustees as appointed, or
solely in the new trustee, "as the case may require."   The
fund was then invested in South Carolina, and so continued.
Evident provision was made for convenience in handling
and accounting and in remitting the income for the foreign
beneficiaries.   It appears that these beneficiaries reside
abroad, and have never been in this country.   The records
of this Court show that, upon the death of Francis Hawks-
ford and petition for a new appointment, Mordecai was the
controlling and managing trustee, resident, and in posses-
sion.  Cyril V. Hawksford was appointed to succeed his
father, and Mordecai was reappointed.   Mordecai was
thereafter recognized as resident trustee in possession by
authority of the Court given him to surrender and to re-
ceive solely the proceeds of certain matured bonds held for .
the estate, and to execute and deliver conveyances of real
estate belonging to the estate upon payment of the purchase
price to him (Mordecai).   The bonding company is charge-
able with knowledge of this, and of the very evident fact
disclosed by the entire record, that receipt of the corpus
of the trust by Cyril Hawksford was never contemplated
and that his sole duties as trustee would and did consist of
receiving the income, and such other sums as were allowed
by the Court, as forwarded to him by Mordecai, paying the
same over to the parties entitled thereto.   This course was
followed under the regime of Mordecai and Francis Hawks--
ford, for whom the defendant bonding company was surety,
and was thereafter continued.   The bond recites the pend-

ing cause of *Murray v. Murray et al.,* and the order therein
of November 24, 1905, and is conditioned that the said.
Mordecai and Hawksford, so appointed, "do and shall well
and truly perform their duties as trustees as prescribed by
the terms of said decree and of said deed of postnuptial
settlement, and shall obey all orders of the Court made or
to be made in said cause." Further proceedings of the
trustees and further orders in the said cause were under
the security of the bond on which the defendant bonding
company was surety, and were necessarily within knowledge
of their agent, Mordecai.

This obligation of Cyril Hawksford is not, and cannot be
construed to be an undertaking by him to become surety for
his co-trustee and co-principal, Mordecai.

Applying the test of the numerous cases cited by the de-
fendant, I can find no acts of either commission or omission
by Hawksford that placed Mordecai in a position to dissi-
pate or appropriate to his own use this fund. Had Hawks-
ford failed to exercise such supervision of the nature of in-
vestments as the circumstances required, or approved of
questionable and unauthorized investments for the trust
fund, and loss thereby resulted, he would unquestionably be
liable for that which was made possible by his wrongful con-
duct. But the facts and circumstances show not only that
he relied on the accountings made from time to time by
Mordecai for the trustees, but that the accountings so relied
on were correct. In 1916, as shown by accounting, Mor-
decai had in his possession and solely under his control
negotiable securities, city of Charleston bonds, of the value
of about $70,000. If he had power of attorney from Cyril
Hawksford, it in no way increased the hazard nor the dan-
ger of subsequent conversion of these securities to his own
use by Mordecai.

The plaintiff beneficiaries cannot recover from Hawks-
ford. They knew that he had none of the assets of the trust

estate in possession except the income remitted to him from time to time by Mordecai and paid over to them. Had they acquiesced in this method and handling of the estate without the knowledge of the surety, then they might be estopped from proceeding against the surety for recovery of loss. I find, however, that the surety, in all the circumstances, is chargeable with this knowledge of the beneficiaries through the knowledge of its agent, Mordecai. It follows that the surety knew, or should have known, that this agent, Mordecai, was holding himself out to be its attorney in fact, and in fact exercising power as its attorney in fact not authorized by the written authority with which they now seek to limit their liability.

I repeat that the whole history of this fund, from the time the bonding company became surety for Whaley and Francis Hawksford, as trustee, up to the time the devastavit of Mordecai was disclosed, and the present action brought, shows that the American Bonding and Trust Company of Baltimore City, and its successor, the present defendant, American Bonding Company of Baltimore, placed implicit faith, trust, and confidence in T. Moultrie Mordecai, and it is a sad duty which now falls upon the Master herein, associated with him, first in his office and afterwards for many years at this bar, to find and record that Mordecai was unworthy of the trust and shamefully abused it, forfeiting the high position that he had gained in the legal world as a practitioner and a recognized leader of this bar. It was this misplaced confidence, without connivance on the part of the beneficiaries or of the cotrustee, Cyril V. Hawksford, that made the devastavit of Mordecai possible. The bonding company should and will be held to answer, as surety, for the wrongful acts of its principal, its agent, its attorney in fact with limited power, but less limited in its exercise in fact, and its trusted counsel, ending another chapter in the fall of man, as a surety (and especially a commercial

surety) is required and should expect to do when the two necessary things are established, as in this case—its valid undertaking as surety, and the default of its principal.

The basis for settlement will require an intricate accounting, which I ask leave to file, with a separate report thereon, when prepared.

The plaintiffs pray for the removal of the present trustees, and the transfer of the corpus of the estate to trustees in England, when and if appointed by the English Courts. The original indenture foresees the possibility of this arrangement. This Court would, of course, require a strict showing of the careful selection and appointment of English trustees by a Court of competent jurisdiction, but I am of the opinion that upon such showing this Court would authorize a transfer and delivery of the fund to such trustees, the beneficiaries, resident in England, being enabled thereby the more conveniently to receive the income and to observe the conduct of the trust. I respectfully recommend that the present trustees be removed, and that the beneficiaries be authorized to institute proceedings before the proper English tribunal for the appointment of new trustees, and to have such proceedings certified to this Court when completed.

I further recommend that by decree herein the defendants T. Moultrie Mordecai and American Bonding Company of Baltimore be held jointly and severally liable to the beneficiaries for such sum as may hereafter be found to be devastavit committed by T. Moultrie Mordecai by audit to be hereafter filed; that the Master herein be authorized to receive and receipt for any and all sums that may be due from any source to the trust estate of William James Murray, and to remit to the life tenant, Clarissa Broome, from time to time so much and such parts thereof as he may find to be due to the said life tenant as income, the balance to be held subject to the further order of the Court.

## CIRCUIT DECREE

"The object of this action is to hold the trustees of the 'Murray' or 'Hawksford' estate and their bondsmen for practically the loss of the whole estate.

T. Moultrie Mordecai of Charleston and Cyril Hawksford of England were the trustees and the American Bonding Company of Baltimore underwrote their faithfulness.

The Court heard the case two days before the opening of the June Criminal Court here, and has only been able to take it up for writing its decree since that Court adjourned. It finds the record burnened with unusually extended arguments. It thinks it unnecessary to make a detailed statement of the facts and history of the case; all of that was well set out in the report of the Master of May 25th, 1920. The lawyers are familiar with all of this, and it can be of no interest to anyone else; therefore, I am merely deciding the case upon the points involved, as deduced from the whole presentation of the controversy.

I hold that both Mordecai and Hawksford broke the trust and that the Bonding Company is liable to the full extent so far as the defalcations of the trustees are proven within the limit of the bond, and said trustees are removed subject to the liability found against them, the extent of which in detail is to be fixed according to this decree.

Mordecai has not only defaulted, but fled the State; this being but one of his many gigantic swindles perpetrated here.

Hawksford is liable as trustee also absolutely, on the ground of gross carelessness in the discharge of his trust, thereby contributing to and facilitating the actual devastavit.

The estate was never held according to the terms of the decree whereunder Mordecai and Hawksford became trustees, to wit, in joint control.

The bonding company waived this, having full knowledge of the facts; and the principles of waiver must be applied to it, as to an insurance company.

The facts do not warrant a finding that the beneficiaries are estopped from knowledge that the trust was being violated, if there be any principle of law whereby waiver or estoppel could obtain against them; which I think there is not.

But, although our rules are rigid as to holding a Bonding Company under such facts, our Courts must be fair with them, and not cut them off from recourse, as is sought to be done here, by letting Hawksford out of his liability as a trustee or a party to the bond on the finespun theory that he never handled the funds though he did receive full commissions for receiving them through his agent, Mordecai, and paying out income subsequently.

Hawksford knew that the funds were not in joint control and never took any steps in pursuance of his duty as trustee to see that the decree was carried out, or that the trust was being administered with ordinary care.

At the earnest solicitation, a long time before the crash came he brought about a so-called accounting before the Master, at which Mordecai showed a bunch of bonds, amounting to seventy thousand dollars, when Mordecai's own written account showed a lesser sum by far. He knew that the income was not being paid with any regularity. The slightest inquiry at that time even, if not long before, would have convinced any man that Mordecai was going wrong, and that no property over which he had control was safe in his hands. There are many other facts along this line which show absolute gross negligence in not keeping up with his cotrustee, and thus contributing directly to the loss of the estate.

A trustee who has been guilty of such gross negligence in his obligation to his beneficiaries, presents a sorry appearance in a court of equity seeking to slink out of his liability with a mass of technical argument, all very nicely put together.

There is no basis whatever, in law or fact,. for the find-ing that Hawksford is not even liable under the bond. He signed the bond for himself, as well as surety for his co-trustee; and he cannot escape liability for the breach of the bond, which has been proven. I find, therefore, under the law and facts that Hawksford is liable both as trustee and also under the bond in question.

That 'large estate, as it appers' from the record, has had a shifting and shady history in the Courts of our State, wherein, with all good intentions, no doubt, it sought refuge. Large sums of money have already gone in costly litigation.

It has been, and is now, on· reference in chancery, a method of trial which a learned author has designated as a hatchery for fees and a hospital for incurable controver-sies. The Court therefore is much concerned, having the whole matter now before it, to make an end of the contro-versy, and a complete settlement of all issues between the parties. It finds that there are sums of money arising from the estate in the hands of the Master; real estate which probably needs attention; outstanding mortgages, which are nearly outlawed, and that the parties are so little in accord on any general plan of terminating the controversy and that action must be taken in all these matters pending an appeal which will no doubt be taken; that for these and other reasons a receivership is the only solution of the problem. The Court thinks that this will be a vast saving in the expenses of the litigation and ultimate transfer of the funds in question to a trustee to be appointed in Eng-land to whom it has in mind to turn over the whole fund for the beneficiaries who live there; and which can easily be done under ample authority in our State.

The Court must have some officer under its appointment to make reports in all these matters as the exigencies may arise, and to bring such suits, or collect such assets as they may recommend to the Court for its orders thereon, and otherwise.

It is therefore ordered that the plaintiffs have judgment against the trustees and the Bonding Company for such amount as shall hereafter be ascertained by the Master, confirmed by order of the Court as shall be found to be due upon an accounting therefore as recommended by the Master in his report.

It is further ordered that Thomas P. Stoney, solicitor for the Ninth Judicial Circuit, and Lionel K. Legge, attorney, be, and they are hereby, appointed receivers for the estate in question, and hereby authorized and directed to receive from the Master all funds now in his hands to the credit of said estate, and all or any books or papers going to show assets or liabilities of the estate, in order that they may proceed along the line of the duties as receivers hereinabove referred to; and have the usual powers of receivers in such cases provided by law.

They shall enter into a joint bond with some responsible surety company doing business in this country conditioned for the faithful performance of their duty as receivers, such bond to be approved by the Clerk of this Court, and not to be in the American Bonding Company of Baltimore, a party to this suit. That the bond shall be in the amount of twenty-five thousand dollars, to be increased at any time to protect any and all funds which are to come to their hands, and the charges therefor are to be paid out of the funds of this estate, and taxable as costs herein, and the said receivers shall proceed hereunder as soon as practicable, and without delay. Application may to come to their hands, and the charges therefor are to which may be necessary to make this decree effective.

　　　　　　　　　　　　　　'R. W. MEMMINGER,

Charleston, S. C., August 2nd, 1920. Judge Ninth Circuit.

*Messrs. FitzSimons & FitzSimons,* for appellant, Hawksford, cite: *Where there are cotrustees each is liable for his own acts alone and not for the breach of trust of his cotrustee:* 10 Rich. Eq. 246; 3 Rich. Eq. 132; McMull Eq.

444; 2 Pom. Eq. Jur. Sec. 1082; 39 Cyc. 309; 28 A. & E. Enc. L. 1069-70; 39 L. R. A. (N. S.) 1029 Note; 181 U. S. 601; 128 Am. St. Rep. 727, 15 Ann. Cas. 518. *English Rule:* 1 Hill Trustees, 309; 13 N. J. Eq. 308. *Trustee bound to ordinary care of property in possession, and not responsible for property he did not and could not receive*: 23 S. C. 129. *Courts will not ordinarily permit trust funds to be taken out of the State*: 50 S. C. 471; 20 S. C. 237; 1 Hill Ch. 140; 2 Hill Ch. 54; Bail. Eq. 395; Rice Eq. 69. *Giving of receipt will not charge trustee not receiving the property*: 130 Mass. 481; 39 Am. Rep. 470; 39 A. &. E. Enc. L. 1071, note 7; 9 Am. Dec. 298; 99 Mass. 194; 11 S. & R. 71 (Pa.); 2 Hill Eq. 291; 25 *W. Va.* 465. *Acceptance of commissions does not make absent trustee responsible*: 32 App. Div. 324, 53 N. Y. Supp. 25. *Under several bond each trustee is liable for his own acts alone*: 3 Brev. 145; 4 R. C. L. 58; 4 A. & E. Enc. L. 638; 67 Am. St. Rep. 271; 105 Am. St. Rep. 890; Rice Eq. 275. *Bonds of Surety Company not to be given strict construction of personal surety bonds*: 104 S. C. 171; 103 S. C. 55; 38 L. R. A. (N. S.) 699; 44 L. R. A. (N. S.) 848. *May waive provision for its benefit*: 102 S. C. 115; 105 S. C. 364; 106 S. C. 419; 103 S. C. 284; 82 S. C. 51; 85 S. C. 13; 88 S. C. 31; 90 S. C. 168; 97 S. C. 375. *Beneficiary who consents to a breach of trust cannot maintain suit*: 2 Pom. Eq. Jur., Sec. 1083; 44 L. R. A. (N. S.) 980.

*Messrs. Nathans & Sinkler* and *Wm. F. Clarke,* for American Bonding Co., appellant, cite: *Beneficiaries and Trustees consented that joint control be not complied with, which caused loss*: 102 S. E. 328; 67 S. C. 451. *Company not charged with notice of act of agent in an attempt to defraud it*: 107 U. S. 157. *In reply*: *Ratification of accounts by Hawksford made him liable*: 29 Beav. 504. *Duties of Trustee in relation to his co-trustee*: 2 Story Coms. 525; McClel. 168, 9 Rich. Eq. 200; 145 N. Y. 452; 8 Ch. Div. 591, 47 L. J. Ch. 662; 26 Weekly Report 631; 8 Price Rep.

127; 3 Simon Rep. 265; 11 Vesey, Jr. Rep. 318; 2 J. & H. 259; 20 Bevans 117. *Hawksford not obliged to accept trust:* 140 Atl. 434; 2 Russ & My. Rep. 715. *Any trustee who acts is active trustee:* Ch. Rep. 125; 31 Am. Dec. 576; 32 Tenn. Rep. 374; 1 Dick 356 (Tenn.); 120 Cal. 467; 2 Gris. 593; Story Eq. 517; 18 Am. Dec. 250; 13 S. C. 569; 1 S. C. 394; McMull. 153. *Liability of Hawksford as affected by execution of joint bond:* Rich Eq. Cas. 390; 10 Rich. Eq. 249; 3 Brev. 145; Rice Eq. 290; 1 Bail. L. 348; 2 Hill L., 423; 10 S. C. 247.

*Mesrs. Miller, Huger, Wilbur & Miller,* for respondents, cite: *Knowledge of agent is notice to the principal:* 37 S. C. 88; 57 S. C. 358; 48 S. C. 195; 75 S. C. 315; 80 S. C. 392; 88 S. C. 31; 70 S. C. 229; 65 S. C. 105; 74 S. C. 221; 55 S. C. 589; 52 S. C. 224; 51 S. C. 180; 46 S. C. 541; 70 S. C. 295; 97 S. C. 375; 86 S. E. 687; 21 R. C. L. 838, 839, 840, 841, 842. *Surety Company is treated in fact as an Insurance Company:* 104 S. C. 167; 103 S. C. 55, *and held to a stricter liability than individual sureties:* 128 N. C. 366; 38 S. E. 908; 56 N. Y. App. Div. 39; 67 N. Y. Supp. 362; 21 R. C. L. 1160, 1161, 1163. *Where circumstances are sufficient to put a party upon inquiry, he is chargeable with constructive notice of facts which inquiry would disclose:* 13 S. C. 5. *Scope of agency for jury, and knowledge by agent within such scope is imputed to principal:* 65 S. C. 105. *Principal liable for fraudulent act of agent in course of his employment:* 13 S. C. 5; 37 S. C. 377; 65 S. C. 45; 76 S. C. 211. *Agent may waive forfeiture:* 74 S. C. 221. *Care and duty required of Trustee:* 12 R. C. L. 130, 131; Co-Trustees: 12 R. C. L. 196, 198, 199.

September 27, 1921.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The amount involved in this case is large; the record is large, and the arguments are strong and extended; but, in

view of the full statement of facts set forth in the Master's report (let it be reported), it will be necessary only to write in general terms.

William James Murray, a British subject living abroad, was entitled to a fund of $125,000 that was under the control of the Courts of South Carolina. He made a conveyance of the fund to the two trustees, one a resident of Charleston, S. C., and the other a resident of the United Kingdom of Great Britain and Ireland, living on Jersey Island. From time to time there was a change of trustees, until T. Moultrie Mordecai, of Charleston, S. C., and Cyril V. Hawksford, of Jersey Island, were appointed, and administered the trust for a while. The funds of the trust estate were invested in South Carolina securities and lands located in Charleston. T. Moultrie Mordecai, the resident trustee, had actual possession of the property. He collected the income and forwarded it to the English trustee for payment to the cestui que trust. Under an order of the Court here, the trustees gave bond in the sum of $100,000 with the American Bonding Company, of Baltimore, as surety. In this matter Mr. Mordecai occupied a threefold position. He was the resident trustee, the attorney in fact, and also the attorney at law for the bonding company. The bonding company put the whole thing in Mr. Mordecai's hands to do with as he pleased. The thing that he did do was to appropriate all the securities to his own use and abscond.

This action is brought for an accounting, for the judgment for any deficiency, and to remove the trustees and to move the fund to England. The case was referred to the Master, who found that the foreign trustee was not liable, but that Mr. Mordecai was liable as principal and the bonding company was liable as surety. On appeal to the Court of Common Pleas, the trial Judge reversed the Master as to the foreign trustee. This appeal is from the Circuit decree, and raises two general questions: (1) Is the foreign trustee liable for the default of the resident trustee? (2) Is the bonding company liable?

I. Is the foreign trustee liable for the default of the resident trustee? The answer is, He is not. The rule is laid down in *Miller v. Sligh,* 10 Rich. Eq. 247:

"When there are joint trustees, the general rule is that each is liable for his own acts alone, and not for the acts of his cotrustees, except where he has contributed to them."

The terms of the trust contemplated the use of the fund for the support of the cestuis que trustent as their respective interests might appear. The fund was to be held in South Carolina, interest collected here, and sent to England for the support of the party entitled. The foreign trustee never had possession of the corpus. The record shows that it was never in the contemplation of any of the parties of the trust deed or any proceeding in Court that the foreign trustee should get possession of the corpus. The resident trustee was permitted to receipt to the former trustees for the corpus in his own name and also in the name of the foreign trustee. When the income was past due and unpaid, the foreign trustee began promptly to urge payment of the income, and notified the bonding company of the default, and did all he could to protect the trust estate. The foreign trustee could not have acquired possession of the fund and taken it out of the jurisdiction of the Courts of this State without the proper and well-recognized procedure for the transfer, and this would have taken more time than was allowed by the resident trustee. There is no testimony to show any want of diligence on the part of the foreign trustee, Mr. Hawksford, and there is no basis for finding him liable for the defalcation of the resident trustee.

II. Is the bonding company liable for the default? It is liable. The Court gave to the bonding company ample protection. The Court allowed the bonding company to secure a joint deposit, in bank, of the funds of the estate in the joint names of itself and the trus-

tees. It did not avail itself of the protection. The bonding company made it possible for Mr. Mordecai to do just what he did do. Even when the foreign trustee notified the bonding company that the resident trustee was not performing his duty, the bonding company notified Mr. Mordecai of the complaint against him; that pressure would be brought to bear on him; and practically notified him to make a clean sweep, if he had not already done so, and get away. A large part of the income was from municipal bonds of the city of Charleston (this the bonding company knew), and a failure to pay over an income so derived demanded prompt investigation. The bonding company could not escape liability even if it were liable only for gross negligence.

The bonding company complains that there was error in holding that the bonding company waived the joint control of the trust fund. This holding is abundantly sustained by the record, and there is no evidence that the cestui que trust waived anything.

The judgment of the Circuit Court is reversed as to the liability of the foreign trustee, Hawksford, and affirmed as to the liability of the bonding company. Cyril V. Hawksford is not liable, and the American Bonding Company of Baltimore is liable.