12819

ANDREWS v. UNITED STATES FIDELITY & GUARANTY CO.
*ET AL.*

(153 S. E., 745)

458

464

470

478

480

498

502

504

508

514

*Messrs. Glenn & Glenn,* for appellant,

*Messrs. McDonald & Macauley,* also for appellants,

*Messrs. R. B. Caldwell,* and *Gaston, Hamilton & Gaston,* for respondents,

*Messrs. J. H. Marion,* and *J. J. Earle,* for respondents,

January 27, 1930.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action was commenced in the Court of Common Pleas for Chester County, June 2, 1926. As a statement of the history of the case, the admitted facts, a synopsis of the pleadings, a brief statement of the findings and conclusion

of the circuit Judge, the Court adopts the agreed statement of counsel contained in the Transcript of Record, as follows:

"This is an action upon a guardian's bond. The plaintiff is the ward of the guardians who executed the bond. The bond is in the sum of fifteen thousand ($15,000.00) dollars, is in due form, and was duly executed and filed, on January 29th, 1913, in the office of the probate Judge of Chester County, by Samuel E. McFadden, A. G. Brice and the United States Fidelity and Guaranty Company. The condition of the bond is in the usual form, to the effect that if the said Samuel E. McFadden and A. G. Brice shall faithfully execute their trust, as guardians of the person and estate of Coralie Means during her minority, and deliver and pay over to her when she shall come of age the estate due her, then the obligation to be void; else to remain in full force. Upon the execution of said bond Samuel E. McFadden and A. G. Brice were duly issued letters of guardianship jointly and entered upon the discharge of the duties of their trust as guardians of the estate of said Coralie Means, a minor then of the age of ten years. From January, 1913, to January, 1918, the guardians filed in the office of the probate Judge five (5) annual returns, showing their receipts and disbursements as such guardians during the years 1913 to 1917, inclusive. On January 30, 1918, A. G. Brice, one of the guardians, died. Thereafter on September 11, 1918, the executrix of the will of A. G. Brice, deceased, turned over to Samuel E. McFadden, the surviving guardian, all of the securities constituting the estate of the minor, Coralie Means, which had been in the hands of her decedent, A. G. Brice, at the time of his death, and took McFadden's receipt in writing therefor, without formal court procedure or formal notice to the bonding company. After the death of A. G. Brice no annual returns were filed in the office of the probate Judge by Samuel E. McFadden, surviving guardian. On August 6, 1924, Coralie Means became of full

age. She thereupon made demand upon her guardian, Samuel E. McFadden, for an accounting and settlement. No accounting and settlement were made by her said guardian. On January 6, 1925, ·the said Samuel E. McFadden died, without having accounted and without having paid over to his ward any part of the corpus of her estate, except the corpus was reduced by encroachment from ten thousand two hundred ninety-five and 62/100 ($10,295.62) dollars to nine thousand and eight·hundred twenty-nine and 29/100 ($9,829.29) dollars, the maximum amount claimed in the complaint. McFadden's estate was hopelessly insolvent. His personal representative found among his effects no moneys or securities belonging to or applicable to the payment of the amount due the ward on account of the corpus of her estate. From the books and papers of the deceased guardian, Samuel E. McFadden, his personal representative, in response to demand made, furnished to the plaintiff statements, made up in the form of annual returns, showing, or attempting to show, the amount of the corpus of the ward's estate in the hands of the said guardian on January 1, 1925, to be the sum of eight thousand five hundred and nine and one/100 ($8,509.01) dollars.

"On June 2, 1926, the ward, Coralie Means, commenced this action against the United States Fidelity and Guaranty Company, one of the makers of and obligors upon her guardian's bond, and Mary G. Sledge, as administratrix D. B. N. and C. T. A., of the estate of Samuel E. McFadden, one of her deceased guardians. In her complaint she alleges, in substance, the facts which are hereinabove set out, and further alleges, in substance, that the corpus of her estate which had come into the hands of her deceased guardian, Samuel E. McFadden, after the death of his co-guardian, A. G. Brice, amounted in value to the sum of at least nine thousand eight hundred and twenty-nine and 45/100 ($9,829.45) dollars, and that the condition of the bond filed by her guar-

dian for the protection of her estate had been breached by the failure of her said guardian, Samuel E. McFadden, to defend and protect her estate, to render true and correct annual accounts to the probate Judge, and to account for and deliver and pay over to her when she came of age the value or amount of the corpus of her estate, with accrued interest, to her damage in the sum of $9,829.45, with interest thereon from January 1, 1925.

"The defendant, United States Fidelity & Guaranty Company, interposed a demurrer to the complaint based upon the grounds:

"(1) That the personal representative of A. G. Brice, deceased, was a necessary party.

"(2) And that it appeared upon the face of the complaint that the guardians' account had not been adjusted and that no specific sum had been decreed by the probate Court to be paid over by the plaintiff. This demurrer was overruled, but on July 30, 1926, on motion of the defendant, United States Fidelity & Guaranty Company, an order was made requiring that Mrs. Sallie M. Brice, executrix of A. G. Brice, be made a party-defendant. The order making Mrs. Brice, as executrix, a party was made without notice to her. Pursuant to this order, the summons and complaint were served upon Mrs. Sallie M. Brice, as executrix of A. G. Brice, deceased, as a party defendant.

"Each of the parties-defendant answered in due time. The defendant, United States Fidelity & Guaranty Company, as surety, contended in its answer that it was liable only as secondary surety upon the bond. That Mrs. Sallie M. Brice, as executrix of A. G. Brice, was primarily liable by reason of A. G. Brice being joint-maker on the bond, and thereby liable as joint-principal and primary surety. Also that the Brice estate was primarily liable by reason of contract of indemnity contained in the original application for the bond.

"The answer of the defendant, Sallie M. Brice, as executrix of the estate of A. G. Brice, deceased, denied the allegations of the complaint and of the answer of the U. S. Fidelity & Guaranty Company and set up as a defense thereto: (1) That A. G. Brice and S. E. McFadden, as guardians, had faithfully and fully performed their duties and made annual returns each year, which were approved by the probate Court, and that there was no default during the life of A. G. Brice. (2) That on the death of A. G. Brice, his duties and liabilities terminated, and that S. E. McFadden became, by law, entitled to the sole control and possession of the assets in her hands, which were turned over to him by her, and that S. E. McFadden took sole control and possession thereof and executed his receipt to her for the assets in her hands and that the estate of A. G. Brice was entitled to a discharge as a matter of law and fact by reason of the settlement in full and payment of the assets to the surviving guardian. (3) That the United States Fidelity & Guaranty Company knew, or should have known, of the death of A. G. Brice, and thereafter continued its liability on the bond of S. E. McFadden, as sole surviving guardian, and waived any and all claims or demands against the estate of A. G. Brice; and continued to act as surety for S. E. McFadden as sole surviving guardian, and to collect and demand premiums on his bond, and neglected to require annual returns from S. E. McFadden, and thereby by its negligence became liable for the defaults of S. E. McFadden. (4) That the application of A. G. Brice to the United States Fidelity & Guaranty Company was the personal, separate and distinct undertaking on his part for his own fidelity under the bond as surety; A. G. Brice's estate was fully released and discharged, and that his estate is not liable under the said application, which is without consideration and did not bind him as surety for S. E. McFadden and his defaults, and is barred. (5) And that the United States Fidelity & Guaranty Company is estopped by reason of its laches, neglect

and failure, after the death of A. G. Brice, to require S. E. McFadden to make annual returns and account; and that she was not liable in any way whatsoever.

"The answer of Mary G. Sledge, as administratrix, C. T. A. D. B. N. of the estate of Samuel E. McFadden, deceased, admitted certain of the allegations of the complaint, but alleged in substance that she had no knowledge or information sufficient to form a belief as to the true status of the account between plaintiff and her decedent, Samuel E. McFadden, deceased, and that she denied liability of her said decedent's estate to the plaintiff and demanded strict proof thereof.

"Plaintiff's attorneys then docketed the case on calendar two. On call of the case in open court on November 12th, 1926, Hon. W. H. Townsend, Judge presiding, ordered that the case be referred to R. L. Douglas, as special referee, 'To take the testimony offered on all issues raised by the pleadings, to state the account and to report the testimony, together with the findings and conclusions thereon only as to the amount due the plaintiff, to this Court with all convenient speed.' At the time of the making of this order, there were present in the Court all of the attorneys of record, except Messrs. Hemphill & Hemphill. From this order of reference, there was no appeal by any party to this suit.

"At the time it was agreed that references should be held immediately and that Judge Townsend should mark the case heard and hear the same in the next two weeks after leaving Chester. The hearing was to be had upon the testimony which was to be taken and to be reported by the special referee. Two references were held in Decmber, 1926, and two in April, 1927, and the report not filed until May 20th, 1927. Although Judge Townsend marked the case heard he never actually heard the case as originally contemplated that he should.

"After the first two references, and on motion of the defendant, United States Fidelity & Guaranty Company, J. Weldon Anderson was made a party-defendant, Mr. Anderson having purchased lands acquired by the joint guardians as mortgagees from the mortgagor. The deed from McFadden, as surviving guardian to Anderson was without any authority of Court.

"This case came for trial before special Judge C. J. Ramage, on January 16th, 1928. All issues in the case were before the Court at this trial, including the appeal from the referee's report.

"Over the objection of certain defendants, the Judge submitted four questions to a jury. The jury decided these four questions in favor of the Brice Estate and against the bonding company as to liability on the guardian's bond. On March 16th, 1928, after motion to set aside the verdict of the jury, Judge Ramage filed a decree affirming the report of the referee as to the amount due the plaintiff in the sum of eighty-nine hundred ninety-nine and 82/100 ($8,999.82) dollars. Decree further held the bonding company primarily liable on the bond and the Brice estate secondarily liable, and that upon payment of the amount due the plaintiff, the payer was subrogated to a one-half interest in the McCluney lands; that the one-half interest in the McCluney lands held by Brice as guardian had never been conveyed to Anderson but was in '*statu quo*.' And that the party paying the bond would be subrogated to this half interest. There were three motions to amend the decree, but the final holding of the trial Judge is as above stated. The final supplemental decree was filed April 14th, 1928."

Following the motion of Messrs. Glenn & Glenn, attorneys for the defendant United States Fidelity & Guaranty Company, to set aside the verdict of the jury, his Honor, Judge Ramage, filed the following decree, dated March 15, 1928:

"This case was marked 'Heard' in open court and the same was taken by me under advisement.

"I have been very much concerned and have devoted much study and reading to the issues involved in this case.

"I am satisfied in the main with the report of R. L. Douglas, special referee, and I adopt his report as a part of my decree herein, except as herein modified. It is a splendid thing to have all the issues passed on by a good lawyer and this practice ought to be more prevalent. I adopt the report but in case anything therein should conflict with the special provisions of this decree, then, of course, the decree must prevail.

"I also refuse to set aside the findings and verdict of the jury herein. I sustain the verdict of the jury and make it a part of this decree so far as United States Fidelity & Guaranty Company is concerned.

"It is ordered that plaintiff have judgment and that the same be entered up in the Clerk's office for the sum of eight thousand nine hundred and ninety-nine dollars and eighty-two cents, together with interest on the said amount from January 1, 1925, at seven per cent per annum against Mary G. Sledge, administratrix of the estate of S. E. McFadden, and against the United States Fidelity & Guaranty Company.

"It is further ordered that the estate of A. G. Brice be and the same is hereby declared discharged from all liability, unless the plaintiff should fail to collect out of the United States Fidelity & Guaranty Company and in that case, plaintiff is hereby permitted to bring an action against the estate of A. G. Brice if she should be so advised, but so far as any other party to this action, any further action against the estate of the said A. G. Brice is hereby barred.

"Perhaps I ought to stop right here and let all further proceedings in the case be settled by some other Judge.

"That really would have been the proper method: let plaintiff get or fail to get her relief and then let all other matters and things be settled by subsequent proceedings.

"But under the pleadings in the case and inasmuch as it is understood that I am to pass on all issues raised, I shall proceed to dispose of the case as best I can.

"I refuse to allow McFadden's estate to be paid anything in this case and disallow any claim of any kind set up by the said estate; any other course would be taking money from innocent parties who must suffer already too severely by his conduct. I hold that the McCluney mortgage was and is discharged under the ruling of the Supreme Court in the case of *Werber v. Cain,* 71 S. C., 346, 51 S. E., 123, and other cases on the same subject.

"I hold that McCluney is discharged by the conveyance of the land to Brice and McFadden, guardians.

"The main question in the case from the standpoint of the law is: What part of the land did McFadden convey to Andersons; none or all or one-half?

"I have read many cases on this question and am frank to say that the question is one over which much darkness and confusion hover.

"It is useless to say that a guardian cannot convey away the real estate, the legal title to which is in the ward. That is elementary. By 'belonging' to the ward in the sense of the ward's having the legal title, is what is meant here.

"It is also clear that when property is willed to a trustee with power to sell, then the trustee can convey the legal title to the property. But in all these cases, the whole thing depends on the terms, language, and conditions set out in the instrument creating the trust relationship and most of the cases confine their decision to the actual terms of the paper writing before the Court in the particular case.

"It is also well settled that what is called the 'Statute of Uses' will execute or pass over to the *cestui que trust* the entire property in the land, unless there be some actual duty

or active duty to be performed by the trustee. There is no need for citation of authority for any of these matters.

"As in most other cases, the trouble is not so much to find out what the law is, as to properly apply the law to the facts.

"It seems to me that the reasoning of McIver, J., in *State v. Evans,* 33 S. C., 184, 11 S. E., 697, 698, is determinative of the present case. The conveyance in that case was to C. P. Leslie, Land Commissioner, and it was held that these words did not vest the legal title in the State as it was the manifest object to let the legal title stay in the commissioner so that he might the more easily re-sell the land in small lots. It seems that this was the object of Brice and McFadden in this case. The word Guardian would indicate on its face that there was an active duty to be performed on the part of the guardian at least during the minority of the ward and I think and hold that the word itself imports an active trust that would not become a passive trust till the guardian had made a full settlement with the ward. That appears to be the case here and I so hold.

"Now, another difficult question arises. Did McFadden as surviving guardian have the right to convey the whole fee?

"The cases holding this are those dealing with powers; that the power of sale on the principle of joint tenancy goes to the survivor and that statutes like ours providing for the severing of a joint tenancy, do not apply to a trust relationship, but that the survivor takes the full power to convey the fee by reason of the doctrine of survivorship under the common law relating to joint tenants.

"But here we have not a power but a legal estate. This distinction is of the first importance here.

"We have not only an estate but one that passed to the legal heirs of A. G. Brice under the common law.

" 'The death of a trustee named in a deed creating a trust does not destroy the trust, but the oldest son of the trustee

becomes his successor, in law, unless the Court names and appoints another trustee.' *Reynolds v. Reynolds,* 61 S. C., 243, 39 S. E., 391.

"Chancellor Johnston in *Martin v. Price,* 2 Rich. Eq., 412, demonstrates this matter very clearly and shows that the trust goes to the heir at common law.

"I fail to see how the legal estate that was in Brice could go to his heir at common law and also vest in McFadden at the same time.

"As to the right of survivorship: Chancellor Harper in *McMeekin v. Brummet,* 2 Hill, Eq., 638, says:

" 'Any interest, of any sort, in which there may be a joint tenancy, shall be severed by the death of one joint tenant, and the share of the deceased go to his legal representative.'

"So in my opinion as a result of the above cases and the general law on the subject, the Andersons only got the one-half of the land, and the other half, the Brice half, is still in the estate and when the United States Fidelity & Guaranty Company pays the amount of the judgment to the plaintiff, it will be subrogated to the one-half of the tract of land as a tenant in common with Anderson or rather will have the right to take over this land. And the said United States Fidelity & Guaranty Company, one of the defendants, is hereby given full power to take such steps then as may be necessary to realize on the said one-half. The Court will protect Anderson in the one-half that could be conveyed by McFadden but not in the one-half that Brice had as trustee and while the right of subrogation will not exist till the money has been paid, yet when the money is paid, the said United States Fidelity & Guaranty Company will then be subrogated to the one-half that is covered by the Brice trust.

"If there be any significance to the words 'as Trustees' it cuts both ways for the word as is omitted in the premises of the deed but is used in the habendum.

"Recurring to the *Evans case* above cited, the language was as follows: 'Unto the said Charles P. Leslie, land commissioner, his successor or successors, their heirs and assigns forever. * * * (to have and to hold lands) to the proper use and behoof of the said party of the second part, his heirs and assigns forever, and the warranty is to the said party of the second part, his heirs and assigns.' The State cannot maintain an action for the recovery of this land, because the deed does not convey to her the legal title.

"The case says: 'It would seem that the Legislature never intended that the title to lands purchased by the land commissioner should be taken to the State, but rather to the land commissioner so that re-sale could be readily made by him.'

"*Carrigan v. Drake,* 36 S. C., page 354, 15 S. E., 339, is in point also. (One of the best discussions of powers is in 4 Kent Com. (1873) ed. by Justice Holmes at star page 326.) Even if this were simply a power and not an estate as I construe it, it would not survive under the authority of Kent.

"So my conclusions are as follows: Plaintiff is entitled primarily to be paid out of the McFadden estate, but as that estate is admittedly insolvent, the United States Fidelity & Guaranty Company will have to pay the bond; that Brice estate is released so far as the United States Fidelity & Guaranty Company is concerned; that Anderson takes one-half of the land conveyed to the Andersons by McFadden; that when the United States Fidelity & Guaranty Company pays the bond, the said company will be subrogated to the one-half of the land that Brice could have conveyed; that in case the plaintiff fails to get her money out of the United States Fidelity & Guaranty Company, then she can go on to the one-half of the McCluney lands and then on the Brice estate, for while the Brice estate is discharged so far as the United States Fidelity & Guaranty Company is con-

cerned, that and yet, as a last resort, the said Brice estate will be liable to the plaintiff; this is the case as I see it, and the plaintiff cannot enter up judgment as against the Brice estate and hold it liable on the bond till she has first exhausted the one-half interest in the land of which J. Weldon Anderson holds the other half. Miss Mary G. Sledge, administratrix, has shown that the estate of McFadden is insolvent.

"All positions and exceptions in the record contrary to this decree are overruled.

"Any party to this action may apply at the foot of this decree for such other or further orders as may be necessary to carry out the terms of this decree.

"By paying the bond, I, of course, mean so much of the bond as is covered by the judgment herein ordered to be entered up.

"I hold that plaintiff could take the one-half of the McCluney land, but she elects to proceed against United States Fidelity and Guaranty Company, and that this company, when it pays up the judgment, will be subrogated to her right and may move to have a trustee appointed or take any other steps it may be advised to take possession or dispose of that half, and that Anderson already has legal title to the other half.

"C. J. RAMAGE,
"*Special Presiding Judge.*
"March 15, 1928."

After the filing of this decree, motions were made to amend the same by Messrs. Glenn & Glenn, attorneys for the defendant United States Fidelity & Guaranty Company, by Messrs. Glenn & Macauley, attorneys for the defendant, J. Weldon Anderson, and by Messrs. R. B. Caldwell, and Gaston, Hamilton & Gaston, attorneys for the defendant, Sallie M. Brice, executrix of the will of A. G. Brice, upon grounds which need not here be stated. Thereafter his Hon-

or, Judge Ramage, issued the following order, correcting and amending his decree dated March 15, 1928:

"Whereas, it appears that the decree dated March 15th, 1928, heretofore filed by me in the above-entitled cause, contains a typographical error in the statement of the amount for which judgment was allowed and ordered in favor of the plaintiff against the defendants, Mary G. Sledge, as administratrix, etc., of the estate of Samuel E. McFadden, deceased, and the United States Fidelity & Guaranty Company, in that the principal of said amount is therein stated to be nine thousand nine hundred ninety-nine and 82/100 ($9,999.82) dollars, when it should be eight thousand nine hundred ninety-nine and 82/100 ($8,999.82) dollars, that is, the amount found to be due by the special referee, R. L. Douglas, Esq., whose report in that particular was expressly confirmed and adopted by this Court in the said decree; now, on motion of R. B. Caldwell and Gaston, Hamilton & Gaston, attorneys for defendant, Sallie M. Brice, executrix, etc., made pursuant to the provision of the said decree permitting any party to apply at the foot of said decree for such other or further orders as might be necessary to carry out the terms thereof, and duly noticed for hearing before me, it is, after hearing and with the consent of J. H. Marion, attorney for the plaintiff—

"Ordered, that the first word, viz., 'Nine' (9) of the principal amount as stated in the said decree for which judgment is allowed and ordered in favor of the plaintiff herein be changed and corrected to real 'Eight' (8) instead of nine, so that the provision of said decree in which said typographical error appears, as thus amended and corrected, shall read as follows: 'It is ordered that plaintiff have judgment and that the same be entered up in the Clerk's office for the sum of eight thousand and nine hundred and ninety-nine dollars and eighty-two cents together with interest on the said amount from January 1, 1925, at seven per cent per annum against Mary G. Sledge, administratrix of the

estate of S. E. McFadden and against the United States Fidelity and Guaranty Company.'

"It is further ordered that the Clerk of this Court be, and is hereby authorized and directed to alter and correct the decree filed in accordance with the foregoing order.

"It is further ordered, for the purpose of carrying out the terms of the said decree providing that the plaintiff have judgment and that same be entered in the Clerk's office, that the accrued costs of the action be taxed against the defendants, Mary G. Sledge, as administratrix, etc., of the estate of S. E. McFadden, deceased, and against the United States Fidelity & Guaranty Company, including a reasonable fee for the services of R. L. Douglas, as special referee. But in the event the amount of said referee's fee cannot be agreed upon or fixed by consent of counsel for the parties hereto, it is ordered that all remaining costs, exclusive of the referee's fee, be taxed by the Clerk and entered as a part of the judgment in favor of the plaintiff, and that the amount of the referee's fee be left open to be fixed by further order of the Court.

"C. J. RAMAGE,

"Special Presiding Judge.

"At chambers, April 7, 1928."

Later, April 14, 1928, his Honor, Judge Ramage, issued a supplemental decree, as follows:

"Pursuant to notice given by the attorneys for the United States Fidelity & Guaranty Company, and also given by the attorneys for the defendant, J. Weldon Anderson, further hearing was had in this proceeding by agreement at Newberry. Counsel for all parties interested were present with the exception of the attorneys for Mary G. Sledge, administratrix. After hearing the grounds of the several motions and after argument of counsel, it is on motion of Glenn & Glenn, attorneys for the defendant, United States Fidelity and Guaranty Company, ordered that the decree of date March 15th, 1928, be amended in the following particulars:

"1. As to the second ground of motion the decree to read 'as guardians' and not 'as trustees' (folio 939).

"2. As to the third ground of motion the sentence in question to read:

" 'Miss Mary G. Sledge, Administratrix, has shown that the estate of McFadden is insolvent.' That she is given permission to make any further showing before some other Judge as may be necessary for her protection (folio 943).

'3. As to the first ground of the motion the decree is amended as follows:

"That the Clerk insert instead of the words 'the estate' the words 'statu quo' so that it shall read: 'the Brice half is still in statu quo.' The whole sentence to read: 'The Andersons only got the one-half of the land and the other half, the Brice half, is still in statu quo' (folio 937).

"It is further ordered that amendments proposed in the notice of Glenn and Macauley, attorneys for the defendant, J. Weldon Anderson, be, and hereby are, refused.

"C. J. RAMAGE,
"Special Presiding Judge.

"April 14, 1928."

It appears from the record that judgment in favor of the plaintiff, Coralie Means Andrews, was duly entered as ordered by the circuit Judge. From the original order and amended orders of the trial Judge, his Honor, Judge Ramage, the defendant, United States Fidelity & Guaranty Company, the defendant, J. Weldon Anderson, and the defendant, Mary G. Sledge, administratrix, have appealed to this Court, upon exceptions which will be hereinafter adverted to.

EXCEPTIONS OF UNITED STATES FIDELITY & GUARANTY COMPANY

The United States Fidelity & Guaranty Company presents 61 exceptions, several of which contain a number of subdivisions. The first 17 of the exceptions are directed to

the referee's report, from which report this appellant appealed to the circuit Judge; exceptions 18 to 27, inclusive, are directed to the admission of testimony; exceptions 28 to 35, inclusive, impute error in ordering a jury trial; 36 to 39, inclusive, are directed to the charge of the circuit Judge; 40 to 48, inclusive, are with reference to the verdict; 49 to 59, inclusive, concern the decree issued by his Honor, Judge Ramage; and the remaining exceptions, 60 and 61, are with reference to release of the surety. This grouping, which we adopt, was made by the attorneys for this appellant. Counsel for this appellant have further aided the Court by a clear statement of the questions raised by the exceptions and involved in the appeal, and instead of referring to the several exceptions separately, we shall simply refer to the questions which the exceptions raise, in the order stated by counsel for this appellant, and in this connection it may be stated that, under the view we take of the case, it is not necessary to enter into a lengthy discussion of any of the questions presented.

The first question to which counsel for this appellant directs attention is stated as follows:

"1. Failure of referee to re-state the guardian account for a period of five years, 1913–1917; failure of circuit Judge to make any independent personal review of this guardian account as accepted by the referee and likewise failure on the part of the circuit Judge to make any independent personal review of any part of the referee's report and statements of account."

The referee's report, which will be incorporated in the report of the case, goes fully into this question, and the conclusion reached by him on this point, which was approved by the circuit Judge, is satisfactory to this Court. In our opinion there was no necessity for the referee to re-state the guardian account. A reading of the referee's report in connection with the testimony in the case convinces us that the referee made a careful and painstaking study of the

case, that he was fair to the appellant, and that the record amply sustains his findings and conclusions.

In the next question stated, error is alleged on the part of the referee and of the circuit Judge in failing to allow the guardians or any of their representatives proper commissions.

The referee refused to allow commissions on the expenditures which were made by McFadden for the reason that McFadden failed to comply with the requirement of the law as to making returns. Code 1922, Vol. 3, § 5544, provides: "All guardians of estates appointed by the Judge of Probate shall render to him an annual account of their actings and doings, as executors or administrators are required by law to do, and upon making default shall forfeit their commissions." *Epperson v. Jackson,* 83 S. C., 158, 65 S. E.,¦ 217; *Lay v. Lay,* 10 S. C., 208; *Koon v. Munro,* 11 S. C., 139; *Jones v. Swearingen,* 42 S. C., 58, 19 S. E., 947. We do not agree with the contention that commissions should be allowed on the amount found to be owing the ward by McFadden at the time of his death, when the guardianship of McFadden was terminated. McFadden had never paid over a cent during the six years he was acting as sole guardian, but, on the other hand, during that period dissipated the estate, making it necessary for the ward to employ attorneys and institute suit on the guardian bond, resulting in a long and hotly contested litigation. Under these circumstances the ward should not be charged up with commissions. In this connection we call attention to the following statement of this Court, in the case of *Smith v. Moore,* 109 S. C., 196, 95 S. E., 351, 353:

" 'The trustee is now confessedly due to his wards some $6,000.00 and the present issue is: When he shall have paid that recovery, may he deduct from it the usual commission allowed by law for the compensation of trustees? The circuit Court made the allowance on the authority of *Gee v. Hicks* (Rich. Eq., Cas. 5), and a like allowance was made

in *Epperson v. Jackson,* 83 S. C., 164, 65 S. E., 217. But facts make the law of a case, and the facts here differ from those of the cases cited. * * * In the instant case Moore is not now guardian; he was removed from the trust by order of the probate Court in April, 1914, five months before this action was brought. If, therefore, Moore pays this recovery, he will not do so as guardian, nor will he pay it to the legatees, but to an officer of the Court. Under the very words of the statute which gives the right, Moore is not entitled to reduce the recovery by any alleged commissions due him. He does not come as a trustee executing his commission, but as a defaulter, brought to bar by another trustee,' " etc.

The third question presented by counsel is with reference to "failure to allow interest credit on annual expenditures before striking annual balance."

A reference to the report of the referee convinces us that the referee allowed every credit to which the parties were entitled.

Under the fourth question stated error is alleged as follows:

. · "4. Error on the part of the trial Court in transferring case from calendar two to calendar one after reference had been ordered in open court. This transfer was made after all testimony had been taken pursuant to terms of order of reference from which no appeal was made; all parties had presented evidence and cross examined adverse witnesses. That such conduct and procedure was a waiver of jury trial."

After the defendant, Sallie M. Brice, executrix, was made a party to the action, which was some time after the suit was commenced, the attorneys for this defendant made a motion to transfer the case to calendar No. 1; but this motion was denied. The defendant, United States Fidelity & Guaranty Company, gave notice of motion of trial before a jury *viva voce* by testimony in open court. Judge Ramage,

who was presiding, refused this motion, making the following ruling:

"Court: I will decide this whole case, but I am going to submit these issues here to the jury. I hold that I can set aside the verdict, if I want to, after I hear the testimony. I think that will be the best way to end this matter, if I think necessary to submit these matters to the jury when I get through and receive their verdict, and then I can take their whole record home and take such a time as I see fit; in other words, it is a matter for me entirely, but I am going to get a verdict from the jury on such matters so I will have the benefit of the very complete report of Mr. Douglas, and also the verdict of the jury. Of course, I won't be bound by either, but can decide the matter as I see it."

Thereafter a jury was impaneled and sworn, and all of the testimony taken before the referee was offered in evidence, and all of the pleadings were read to the Court and jury. The following questions were submitted to the jury:

"1. Whether or not Mr. A. G. Brice's estate has been fully discharged on the bond?

"2. Whether or not the United States Fidelity & Guaranty Company waived all claims against A. G. Brice's estate?

"3. Whether or not there has been negligence and laches on the part of the United States Fidelity & Guaranty Company?

"4. If there has been negligence and laches on the part of the United States Fidelity & Guaranty Company, is this company barred or estopped from setting up any claim against the estate of A. G. Brice?"

These questions the jury answered in the affirmative, "Yes." These questions were submitted to the jury for the purpose of aiding the presiding Judge in deciding the issue of fact involved; but, as stated by him, he was not bound by the jury's finding, and his Honor decided the issues independently of the jury's finding. Under the order of reference the referee took the testimony on all issues, but did

not report his finding on any issue except as to the amount owing the ward. It was therefore incumbent upon the Judge who heard the cause to decide the other issues raised in the case. For the purpose of aiding him he had the right under the practice of this State to frame issues for the jury, but, as stated by his Honor, he was not bound by the finding of the jury. We may add, also, that we fail to see how this defendant, the United States Fidelity & Guaranty Company, was prejudiced by the procedure adopted by the circuit Judge.

This appellant states the fifth question thus:

"5. Error on the part of the trial Court in admitting certain testimony. Certain instruments admitted are contended to be privileged communications or self-serving declarations. Other letters admitted as a basis of estoppel clearly relate to acts *in futuro*, and not communicated to complaining party."

Under the view we take of the exceptions which raise this question, it is not necessary to refer to all of the matters objected to. It is sufficient to state that, in our opinion, all of the testimony questioned had some bearing on the issues involved. It consisted for the most part of reports filed and letters written between some of the parties to the action. Even if it should be conceded that some of these exhibits were not strictly competent, so far as this defendant is concerned, the same could not be considered prejudicial to this defendant, for the reason that the finding of the jury was not binding on the Judge and his Honor decided the questions independently of the jury's finding, and it must be assumed that in reaching his conclusion his Honor did not consider incompetent testimony.

The sixth question is as follows:

"6. Error on the part of the circuit Judge in his charge as to the importance of the jury's findings, as to burden of proof upon affirmative defenses and as to law of laches, waiver and estoppel."

In our opinion it would serve no useful purpose to discuss in detail the several errors imputed to the circuit Judge under this heading, in view of the fact that his Honor passed upon the several issues independently of the finding of the jury, and also in view of the fact that, in our opinion, the record in the case amply supports the findings of the circuit Judge and the conclusion reached by him on all of the issues involved. The questions raised under this line of the exceptions, therefore, become moot questions. We may add that in our opinion his Honor stated the law correctly.

(The charge of the Judge and this appellant's exceptions will be reported.)

The seventh question stated by this appellant is as follows:

"7. Error in refusing to set aside the verdict of the jury in that the facts were undisputed and there were only legal conclusions to be determined by the Court and that the jury's findings were contrary to the weight of testimony and to the charge of the Court."

The circuit Judge refused to set aside the verdict of the jury for the reason that he was convinced that the jury reached a proper verdict, and independently of the finding of the jury he reached the same conclusion the jury did. In our opinion the verdict is well supported by the record.

In this appellant's eighth statement of the issues raised by the exceptions it is contended that there was "error on the part of the Court in holding that in an action upon a joint guardian bond the secondary surety was primarily liable."

The bond in question, executed by the joint guardians and by the bonding company (United States Fidelity & Guaranty Company), was a joint and several liability, and when settlement was not made with the ward when she became of age, she had the right to institute suit against all or either of the parties. Under this theory she instituted suit against the bonding company, making the representative

of the McFadden estate a party to the action. Under the law she had a legal right to pursue this course.

The ninth and tenth questions, which will be considered together, are stated as follows:

"9. Whether the estate of the first deceased guardian could only be released by proper legal procedure or can such estate be released as principal or as primary surety on such guardian bond by the laches or waiver or estoppel on the part of the secondary surety, especially where there was both an express and implied contract on the part of the predeceased guardian to indemnify the secondary surety from all loss by reason of execution of bond.

"10. Whether a release by any means of estate of co-principal on joint guardian bond would release all subsequent sureties on such bond."

In the first place, we must bear in mind that the ward, the plaintiff, Coralie Means Andrews, has not released any party. She has simply elected to bring suit against the bonding company, making the representative of the McFadden estate a party defendant. She had good and sufficient reason for doing this, and independent of any reason, she had a right under the law to adopt this course. The question of the release of the Brice estate involved here is not a question between the plaintiff and the representative of the Brice estate, but a question between this appellant, the bonding company, and the representative of the Brice estate. The answers of the jury to the several questions submitted to the jury on this line, which finding was concurred in by the trial Judge, furnish sufficient ground for overruling appellant's contention, for in our opinion the facts in the case, viewed in the light of the law applicable thereto, are in accord with the finding of the jury and the conclusion of the trial Judge. On this question the order of the trial Judge directed: "That the estate of A. G. Brice be and the same is hereby declared discharged from all liability, unless the plaintiff should fail to collect out of the United States Fidelity & Guaranty Com-

pany and in that case, plaintiff is hereby permitted to bring an action against the estate of A. G. Brice if she should be so advised, but so far as any other party to this action, any further action against the estate of A. G. Brice is hereby barred." This appellant, United States Fidelity & Guaranty Company, had no right in law or equity to require the plaintiff to proceed first against the Brice estate, and under the finding of the jury, concurred in by the trial Judge, to which we have called attention, based upon the facts in the case, the Brice estate, in our opinion, is properly discharged from all liability, in so far as the United States Fidelity & Guaranty Company is concerned. This release of the Brice estate as to any and all liability on account of any amount of money the United States Fidelity & Guaranty Company may have to pay over to the plaintiff has no bearing on the rights of the plaintiff against the United States Fidelity & Guaranty Company. The discharge of the Brice estate, so far as the United States Fidelity & Guaranty Company is concerned, is due to the splendid way Mr. Brice handled the ward's money, and because of the release granted the Brice estate by Mr. McFadden, which release the United States Fidelity & Guaranty Company, by its conduct, if not by its direct acts, approved. In our opinion, under no view of the case is the bonding company entitled to a release.

The eleventh statement of this appellant, as to the questions raised by the exceptions, is as follows:

"11. The joint guardians acquired title to a tract of land by deed of the mortgagor in lieu of foreclosure proceedings. The surviving guardian conveyed this tract by deed without authority of the Court. If such conveyance is held a nullity, who is now the owner of this tract of land, the attempted purchaser, the proper representative of the deceased guardian, or the ward? And if the ward, would not her corpus be charged with the amount of the debt due her when title was taken for this land, that is, $4,000.00, principal of loan on November 14, 1928."

In our opinion the deed in question, under which the defendant, J. Weldon Anderson, claims title, is not a nullity, but gives to the defendant Anderson a good and sufficient title to said land; and therefore the question suggested by the bonding company does not arise. We shall advert to this question when we consider the exceptions of the appellant Anderson.

The exceptions of the defendant United States Fidelity & Guaranty Company are overruled.

### Exceptions of Mary G. Sledge, Administratrix of the Estate of Samuel E. McFadden

Under the first two exceptions of this appellant, Mary G. Sledge, administratrix, error is imputed on account of the Court not holding that this defendant was entitled to a jury trial and in referring the case to the referee. The record discloses that there was no appeal from the order of reference. Therefore that question is not before this Court.

The third exception of this appellant is as follows:

"3. That the Court erred in failing to hold that the administratrix of McFadden estate was not to handle the funds, disburse same to plaintiff and receive commissions, when it is undisputed that the action was founded upon returns carefully prepared by her at the expense of the estate, and when it is apparent that plaintiff will collect all she is entitled to."

The question raised by this exception is fully treated by the referee in his report, and we fully agree with his disposition of this matter. (The referee's report will be incorporated in the report of the case.)

In this appellant's fourth exception error is alleged as follows:

"That Judge Henry made the Brice estate a party defendant to this action without notice and without the knowledge or consent of the administratrix of McFadden estate."

It was not necessary that notice of making the Brice estate a party should be given to this appellant; and it does not appear that this appellant was in any way prejudiced by such order.

The fifth exception of this appellant adopts the twelfth exception of the defendant United States Fidelity & Guaranty Company. The exception is therefore disposed of by what we have stated under our consideration of the exceptions of the appellant United States Fidelity & Guaranty Company.

The sixth exception is as follows:

"The undisputed evidence is that on February 19th, 1913, plaintiff's guardians loaned in good faith and without negligence four thousand ($4,000.00) dollars to McCluney secured by first mortgage on real estate, and that neither of them ever received any interest from said investment. Therefore the referee and Court erred in finding plaintiff entitled to any interest whatsoever on said four thousand ($4,000.00) dollar investment after February 19th, 1913."

The question raised by this exception has been considered and answered adversely to the contention of appellant in our consideration of the exceptions of the appellant United States Fidelity & Guaranty Company.

The exceptions of this defendant, Mary G. Sledge, as administratrix, are overruled.

EXCEPTIONS OF THE DEFENDANT J. WELDON ANDERSON

The exceptions of this defendant, which will be reported with the case, raise several questions, but under our view of the case, it is not necessary to consider all of them. As we view the case, upon the death of Brice, one of the guardians, McFadden, the other guardian, as surviving active trustee, took the legal estate in the entire interest in the land in question. The facts leading up to the execution of title to An-

derson, briefly stated, are as follows: Brice and McFadden were originally joint guardians of the plaintiff, Coralie Means Andrews. While both of these guardians were living, as such guardians, they loaned of their ward's money to one Thomas F. McCluney the sum of $4,000.00. As security to this indebtedness they had McCluney execute to them a mortgage covering certain real estate, referred to in the record of this case as the McCluney lands, containing 103.75 acres. Later, about January, 1914, as additional security to this indebtedness, McCluney executed unto these joint guardians another mortgage, covering another tract of land, consisting of twenty-five acres. These mortgages were held by the joint guardians as security to this indebtedness. The tract of land is referred to in the record at places of 130 acres, being the two tracts combined. The mortgages were first mortgages over the land in question. Later on, when unable to pay the obligation, McCluney executed unto Brice and McFadden, as guardians of Coralie Means (she was afterwards married to one Andrews, and is named in the record as Coralie Means Andrews), their ward, a title to land in question. McCluney gave the deed in satisfaction of the said mortgage indebtedness, and it is evident that Brice and McFadden so regarded it. It appears that they carried this tract of land in their returns to the probate Judge, not as a tract of land, but as a $4,000.00 investment, to which land they held the title as guardians. Mr. Brice died in 1918. Thereafter McFadden continued to handle the funds of the ward, as her surviving guardian.

In January, 1920, McFadden arranged a sale of the land to W. DuPre Anderson and J. Weldon Anderson. In the wording of the title McFadden is referred to as surviving guardian of Coralie Means. The consideration for the sale of the land was $4,690.07. McFadden signed the title, "Samuel E. McFadden, surviving guardian of Coralie Means." In the year 1921, W. DuPre Anderson conveyed his interest in the lands to his brother, the said J. Weldon

Anderson, and since that time J. Weldon Anderson has been in sole possession of the said lands, and has made improvements on the same at a very heavy expense. It appears from the evidence in the case that no person questioned his title and right of possession until he was made a party to this action.

As stated above, it is our opinion that when Brice died, McFadden, as the surviving guardian, surviving acting trustee, took the legal estate in the entire interest in these lands. In support of this holding attention is called to the general rule stated in Perry on Trusts (5th Ed.), Vol. 1, pp. 499, 500:

"Sec. 343. Trust property is generally limited to trustees, as joint-tenants; and if by the terms of the gift it is doubtful whether the trustees take as joint tenants, or tenants in common, courts will construe a joint-tenancy if possible, on account of the inconvenience of trustees holding as tenants in common; and where statutes have abolished joint-tenancy, an exception is generally made in the case of trustees. And courts will not allow a process for the partition of a trust estate. Therefore, upon the death of one of the original trustees, the whole estate, whether real or personal, devolves upon the survivors, and so on to the last survivor; and upon the death of the last survivor, if he has made no disposition of the estate by will or otherwise, it devolves upon his heirs if real estate, and upon his executors or administrators if it is personal estate. (a) The title in the surviving trustee is complete, and no breaches of trust after the death of his co-trustees can be charged upon their estate; nor can the representatives of his co-trustees interfere with his management of the trust estate, even if he is insolvent or unfit for the trust. (b) The *cestui que* trust alone can interfere or apply to the Court for redress or relief. So all rights of action are in the suviving trustee, and he may sue in his own name or as survivor, according as the cause of an action accrued before or after the death of his co-trus-

tees; and, in case of his death, his executor or administrator may continue the action. The rule is that actions must be brought in the names of the parties to the contract."

In 26 R. C. L., 1339, the rule is stated thus:

"Where the trustees are invested with the legal estate, in order to enable them to discharge the various trusts declared, it is the well-settled general rule that the power conferred is a power coupled with an interest, which survives, on the death of one of them, and may be executed by the survivor. It is not necessary that the trustees should have a personal interest in the trust; it is the possession of the legal estate, as a right *virtute officil* in the subject over which the power is to be exercised, that makes an interest, which, when coupled with the power, the latter survives."

See also, in this connection, *Dick v. Harby,* 48 S. C., 529, 26 S. E., 900; *Singleton v. Cuttino,* 105 S. C., 49, 89 S. E., 385.

In the deed executed by McCluney to the guardians we find the following wording:

"To have and to hold, all and singular, the said premises before mentioned unto the said A. G. Brice and S. E. McFadden, as guardians of Coralie Means as aforesaid, their *successors* and their heirs and assigns forever."

Upon the death of Brice, McFadden became *de facto* and *de jure* successor in office to Brice as guardian, and in our opinion, under the facts of this case, had the power to execute the said title, conveying unto the Andersons the land in question, and that J. Weldon Anderson, having received from his brother a deed for his interest in the land, is now the owner of it in fee simple.

The exceptions of this defendant, J. Weldon Anderson, which raise the question we have discussed, are therefore sustained. We do not consider it necessary to pass upon the other exceptions of this defendant.

It is the judgment of this Court that the decree and judgment of the circuit Court be, and the same is hereby, modi-

fied in accordance with the view herein expressed and affirmed in all other respects.

(Note: There should be incorporated in the report of the case the report of the special referee, the Judge's charge to the jury, the decree and the several orders of his Honor, Judge Ramage, the exceptions of the defendant United States Fidelity & Guaranty Company, and the exceptions of the defendant J. Weldon Anderson.)

MR. CHIEF JUSTICE WATTS concurs.

MESSRS. JUSTICES COTHRAN, BLEASE and STABLER concur in result.

MR. JUSTICE COTHRAN (concurring in result) : I concur in the general result announced in the opinion of Mr. Justice Carter as follows :

(a) That the plaintiff is entitled to judgment against the defendant United States Fidelity & Guaranty Company and against the administratrix of the estate of Samuel E. Mc-Fadden, for $8,999.82, with interest at 7 per cent from January 1, 1925.

(b) I do not agree that the executrix of the Brice will had the legal right, by turning over the unadministered assets of the guardianship estate in the hands of Brice at the time of his death, *ipso facto,* to discharge the Brice estate from all obligations under the guardianship bond.

(c) I think that the Surety Company is estopped by its conduct from denying the validity of the transfer of the unadministered assets just referred to, and is not entitled to indemnity from the Brice estate for what it may have to pay upon the bond.

(d) I do not agree with the conclusion of Mr. Justice Carter, that from the fact that McCluney conveyed the legal title of the McCluney tract to the joint guardians, McFadden as the surviving guardian held such an absolute fee-simple title as enabled him, without an order of Court, to convey a fee-simple title to the Andersons; on the contrary, I think that both the acceptance of a deed from Mc-

Cluney in satisfaction of the mortgage which he had given to the guardians, and the execution of the deed from Mc-Fadden to the Andersons, both transactions having been consummated without the authorization of the Court, were entirely irregular and could have been overthrown by the ward, but that her action is a confirmation of both, and that the surety company has no right to complain if as a fact the mortgage has been fully accounted for by Brice. For these reasons I do not think that the surety company is in a position to object or to seek indemnity from the Andersons; but that the title of Anderson is good.

This is an action upon a guardianship bond, signed by Samuel E. McFadden and A. G. Brice, guardians of the plaintiff, Coralie Means (now Andrews), a minor, as principals, and the United States Fidelity & Guaranty Company (hereinafter for convenience referred to as the "Surety Company"), as surety, in the sum of $15,000.00. The bond is in the usual form, dated January 29, 1913, and was followed by the appointment and qualification of the guardians.

It appears that the guardianship estate consisted of funds derived from the sale of certain real estate, rents, a legacy, and a judgment, amounting in total to $10,295.62, and that from the time of his appointment in January, 1913, to the time of his death on January 30, 1918, the estate was handled judiciously and honestly, practically exclusively, by the guardian Brice, who made annual returns to the probate Judge of receipts and disbursements for the years 1913 to 1918, both inclusive.

Brice died, as stated, on January 30, 1918, and on September 11, 1918, the executrix of his will, Sallie M. Brice, turned over to McFadden, the surviving guardian, all of the securities constituting the estate, amounting to $10,295.-62, which had been in the hands of Brice at the time of his death and took McFadden's receipt therefor. This action on

the part of the executrix was without Court procedure or notice to either the ward or to the bond company, surety.

After the death of Brice no annual returns were filed by McFadden. On August 6, 1924, the ward became of age and made a demand upon McFadden for an accounting and settlement, which she was unable to obtain.

On January 6, 1925, McFadden died without having made an accounting and without having paid the ward any part of the corpus of the estate, except so far as it may have been trenched upon by the excess of disbursements over income.

The present action was instituted originally on June 2, 1926, against the Surety Company and Mary G. Sledge, administratrix of McFadden's estate; the plaintiff alleging the facts substantially as set forth above and asking judgment for $9,829.45 as the amount due her, with interest from January 1, 1925. Thereafter on July 30, 1926, upon motion of the Surety Company, the executrix of the will of Brice was made a party defendant.

The Surety Company answered taking the position:

"That this defendant is not a principal on said bond and is only a surety for the co-principals, A. G. Brice and Samuel E. McFadden. That this defendant is informed and verily believes that the estate of A. G. Brice is abundantly solvent and able to pay in full any liability arising from the breach of said bond. That each of said principals and their personal representatives are liable for the full amount due the plaintiff by reason of any breach of said bond by the terms of the application for said bond. And that by signing the application of date January 20th, 1913, the said A. G. Brice made himself liable for the entire amount due said ward by reason of said guardianship or under the terms of the bond, on account of the following agreement in the application:

" 'To indemnify and save the said company harmless from any and all loss, costs, charges, suits, damages, counsel

fees, and expenses of whatever kind or nature, which said company shall or may, for any cause, at any time, sustain or incur, or be put to, by reason or in consequence of said company's having executed said bond.' "

The defendant executrix answered in substance:

"(1) That A. G. Brice and S. E. McFadden, as guardians had faithfully and fully performed their duties and made annual returns each year, which were approved by the probate Court and that there was no default during the life of A. G. Brice. (2) That on the death of A. G. Brice, his duties and liabilities terminated, and that S. E. McFadden became, by law, entitled to the sole control and possession of the assets in her hands, which were turned over to him by her, and that S. E. McFadden took sole control and possession thereof and executed his receipt to her for the assets in her hands and that the estate of A. G. Brice was entitled to a discharge as a matter of law and fact by reason of the settlement in full and payment of the assets to the surviving guardian. (3) That the United States Fidelity & Guaranty Company knew, or should have known, of the death of A. G. Brice, and thereafter continued its liability on the bond of S. E. McFadden as sole surviving guardian, and waived any and all claims or demands against the Estate of A. G. Brice; and continued to act as surety for S. E. McFadden as sole surviving guardian, and to collect and demand premiums on his bond, and neglected to require annual returns from S. E. McFadden, and thereby by its negligence became liable for the defaults of S. E. McFadden. (4) That the application of A. G. Brice to the United States Fidelity & Guaranty Company was the personal, separate and distinct undertaking on his part for his own fidelity under the bond as surety; A. G. Brice's estate was fully released and discharged, and that his estate is not liable under the said application, which is without consideration and did not bind him as surety for S. E. McFadden and his defaults, and is barred. (5) And that the United States Fidelity & Guaranty

Company is estopped by reason of its laches, neglect and failure, after the death of A. G. Brice, to require S. E. Mc-Fadden to make annual returns and account; and that she was not liable in any way whatsoever."

Plaintiff's attorneys then docketed the case on Calendar 2. On call of the case in open court on November 12, 1926, Hon. W. H. Townsend, Judge presiding, ordered that the case be referred to R. L. Douglas, as special referee, "to take the testimony offered on all issues raised by the pleadings, to state the account and to report the testimony, together with the findings and conclusions thereon only as to amount due the plaintiff, to this Court with all convenient speed."

After the holding of certain references under this order and upon motion of the Surety Company, J. Weldon Anderson was by order made a party defendant; he had acquired a certain tract of land, known as the McCluney land, which McCluney had conveyed to the guardians in satisfaction of a mortgage given by him to them for borrowed money and which McFadden, after the death of Brice, as surviving guardian had conveyed to Anderson and his brother, the latter having conveyed his interest to J. Weldon Anderson.

The object of the Surety Company in bringing Anderson into the case was to secure an adjudication that McFadden had no right to convey the McCluney land to Anderson, that it was an asset of the guardianship estate and that its liability upon the bond should be credited with the value of that land; the sale having been made by McFadden without the sanction of the Court.

Anderson answered claiming that McFadden as surviving guardian had the legal title to the land and was authorized to convey it to him.

The referee held a number of references, and on May 20, 1927, filed his report within the limitation fixed, as stated by the order of reference. The report is most elaborately and carefully prepared; he found that the amount due upon

the bond, to which the plaintiff was entitled, was $8,999.82, with interest from January 1, 1925.

To this report the Surety Company filed exceptions.

The case came on for trial in January, 1928, before his Honor, Judge Ramage, then acting as special Judge under appointment of the Governor, prior to his election as circuit Judge. All of the issues in the case were before his Honor at this trial, including the exceptions to the referee's report.

Over the objection of the defendants, his Honor submitted the following issues to a jury which was impaneled, as "issues out of chancery"; they were answered as indicated:

"1. Whether or not Mr. A. G. Brice's estate has been fully discharged on the bond?

"Yes.

"2. Whether or not the United States Fidelity & Guaranty Company waived all claims against A. G. Brice's estate?

"Yes.

"3. Whether or not there has been negligence and laches on the part of the United States Fidelity & Guaranty Company?

"Yes.

"4. If there has been negligence and laches on the part of the United States Fidelity & Guaranty Company, is this company barred or estopped from setting up any claim against the estate of A. G. Brice?

"Yes."

Thereafter on March 15, 1928, his Honor, Judge Ramage, filed a decree in which he confirmed the report of the referee, as he declares "except as herein modified."

Inasmuch as the order of reference directed the referee to take and report the testimony upon all of the issues in the case, to state the account between the guardians and the estate; and to report his finding *only* as to the amount due to the plaintiff, it appears clearly that the only conclusion of the master reviewable by the circuit Judge

was the amount ascertained to be due to the plaintiff; and he having concurred in that finding, it cannot be rightly said that there is anything in the decree which modifies the findings and conclusions of the referee. It was up to him then to decide, from the reported testimony, all of the other issues in the case.

After directing judgment against the Surety Company and the administratrix of the estate of McFadden for the sum of $8,999.82, with interest from January 1, 1925, at 7 per cent per annum, he made the following adjudications:

1. That the Brice estate be discharged from all liability, except upon its happening that the plaintiff be unable to collect the amount of the judgment against the Surety Company. No mention was made of a failure to collect against the McFadden estate, which, in view of its utter insolvency, appeared unnecessary. And in view of the known ability of the Surety Company to respond, the condition as to it appears superfluous;

2. That the McFadden estate be disallowed "any claim of any kind set up by the estate";

3. That the McCluney mortgage was discharged under the ruling of the Supreme Court in the case of *Werber v. Cain*, 71 S. C., 346, 51 S. E., 123;

4. That the guardians held the legal title to the McCluney land upon a conveyance of it to them by McCluney in satisfaction of the mortgage which he had given to them as guardians;

5. That the legal title to the McCluney land having been vested in McFadden and Brice, McFadden, after the death of Brice, could convey to the Andersons only one-half of it, the other half being vested in the Brice estate;

6. That upon payment by the Surety Company of the judgment rendered, it be subrogated to the rights of the plaintiff in the one-half of the McCluney land which was vested in Brice by the conveyance of McCluney;

7. That the Brice estate is released so far as the Surety Company is concerned.

From this decree the defendants, the Surety Company, J. Weldon Anderson, and the administratrix of McFadden estate, have appealed upon exceptions which present the questions hereinafter considered.

There are several very interesting questions involved in the appeal:

1. The amount due to the ward upon the guardianship account:

2. The rights of the ward against the Surety Company;

3. The rights of the Surety Company against the estate of Brice;

4. The rights of the Surety Company against Anderson.

1. The amount due to the ward upon the guardianship account:

As indicated above, I am satisfied with the conclusions of the master confirmed by the circuit Judge upon this phase of the case.

2. The rights of the ward against the Surety Company:

The plaintiff is entitled to enter up judgment against the Surety Company for the amount for which McFadden and his estate are accountable, $8,999.82, with interest at 7 per cent from January 1, 1925.

Inasmuch as the estate of McFadden is admittedly hopelessly insolvent, I apprehend that the exceptions of the executrix are negligible. The Surety Company, of course, is entitled to enter up against the estate judgment for the amount it may pay.

3. The rights of the Surety Company against the estate of Brice:

This is *the vital question* in the appeal; it has received scant attention in the circuit decree and in the opinion submitted by Mr. Justice Carter. The referee was not called upon to do so and did not pass upon it. His Honor,

the circuit Judge, dismisses it with the adjudication simply "that the estate of A. G. Brice be and the same is hereby declared discharged from all liability, unless" the plaintiff shall fail to collect from the Surety Company, and proceeds to discuss what he considered "the main question in the case," the liability of Anderson on account of the purchase of the McCluney land from McFadden, in my opinion a comparatively insignificant and readily soluble issue. His Honor, Mr. Justice Carter, treats the matter as if it were the sole contention of the Surety Company that if it should be held that the Brice estate has been discharged the Surety Company would thereby be released. I understand that the Surety Company does make that contention, but it also makes the most serious contention in the case, that under the terms of the bond, Brice, as one of the obligors of the bond, a principal, undertook to indemnify the company from any loss which might be sustained by it upon account of the bond, and that under this obligation, both implied and express, the Brice estate is liable over to the Surety Company for any amount it may be compelled to pay as a result of the breach of the bond.

On December 5, 1912, it was clearly contemplated that Brice and McFadden should be appointed joint guardians of the estate of the minor, the plaintiff herein, for on that day J. W. Means, Sr., the father of the minor, filed a petition in the Court of Probate for their joint appointment. They were accordingly so appointed, as alleged in the complaint, upon the execution of a joint bond, signed by them as principals and the Surety Company as surety, conditioned "that if the said *Samuel E. McFadden and A. G. Brice* should faithfully execute the trust reposed in them as guardians of the person and estate of Coralie Means a minor * * * then *the obligation of said bond* was to be void otherwise to remain in full force" (quoting from the complaint).

Brice and McFadden made separate applications to the Surety Company for the bond, and while it appears more clearly in the application of McFadden than in that of Brice that a joint bond was contemplated, the application of Brice distinctly recognizes the fact of joint appointment. *They both signed the same bond,* with the Surety Company as surety, and it is too late now to contend that the applications being separate it was intended that separate bonds should be executed. By signing the joint bond, Brice accepted it as a compliance with his application.

Brice from the first assumed practically the exclusive management of the estate; he received the corpus, invested it prudently, collected the income, paid the expenses of the maintenance and education of the ward, and in every way sustained his reputation as an honest and capable attorney and faithful trustee.

The question naturally in order is whether the guardian Brice, through his executrix after his death, has met the obligation to account.

It appears that in September, 1918, after Brice's death in the previous January, the executrix of his will, the defendant Sallie M. Brice, turned over a listed number of collateral securities taken by Brice upon investments of the estate funds, to the surviving guardian McFadden, without an order of Court directing it to be done, and without notice to the Surety Company. She took a receipt for these securities from McFadden, and thereafter the sole management of the estate was conducted by McFadden.

Assuming that this delivery was a valid one, the inquiry is pertinent as to the value of these securities as meeting the obligation of Brice.

They were as follows:

1. Note of G. R. Dawson, $1,000, September 1, 1917, due January 1, 1918, interest 6 per cent, collateral two $500 First Liberty Loan bonds;

2. Note J. B. Westbrook, $1,200, September 1, 1917, due January 1, 1918, interest 6 per cent, collateral twelve $100 First Liberty Loan Bonds;

3. Note M. R. Clark, $400, September 1, 1917, due January 1, 1918, interest 6 per cent, collateral four $100 First Liberty Loan bonds;

4. Note City of Chester, $900, May 5, 1917, due January 1, 1918, interest, 6 per cent, collateral, none;

5. Note Mamie S. Kerr, $225, June 25, 1917, due December 1, 1917, interest 8 per cent, collateral, mortgage on 72 acres of land and chattel mortgage upon a horse;

6. Note J. L. Boyd, $3,000, February 1, 1913, due one year, interest 8 per cent, collateral, mortgage upon real estate, upon which the interest has been paid up to February 1, 1918;

7. Bond of J. H. Marion, $2,350, March 6, 1913, due February 3, 1914, interest 7 per cent, collateral, real estate mortgage, interest partially paid up to January 1, 1918;

8. Note F. M. and H. R. Hicklin, $2,950, January 29, 1913, due one year, interest 8 per cent, collateral, real estate mortgage, interest paid to January 1, 1917, and $929.05 on principal and interest May 6, 1917;

9. Deed of McCluney to the guardians of the tract hereinbefore referred to as the McCluney land and certain other papers in connection therewith, the consideration being McCluney's mortgage to the guardians.

The apparent face value of these securities was as follows:

1. .....................................$ 1,000.00
2. ..................................... 1,200.00
3. ..................................... 400.00
4. ..................................... 900.00
5. ..................................... 225.00
6. ..................................... 3,000.00

| | |
|---|---|
| 7. | 2,350.00 |
| 8. | 2,950.00 |
| 9. | 4,000.00 |

Total ...............................$16,025.00

The face value of these securities being nearly twice the balance due by Brice in January, 1918, it is fair to assume that considerable payments had been made upon them prior to the time they were turned over by the executrix to Mc-Fadden. At any rate, they appear amply sufficient to have met Brice's obligation.

Thereafter McFadden assumed complete administration of the trusts and as events have shown, so far as evidence to the contrary appears, wasted every dollar of them.

It would appear harsh in the extreme to hold that the estate of Brice, who fully and faithfully executed the trust as long as he lived, and whose executrix, upon advice of counsel, delivered the ample securities to McFadden after Brice's death, should be held responsible for the subsequent dissipation of them by McFadden.

I agree with the contention of counsel for the Surety Company that Brice was bound by the express agreement contained in his application for the bond: "To indemnify and save the said company harmless from any and all loss, costs, charges, suits, damages, counsel fees and expenses of whatever kind or nature, which said company shall or may, for any cause, at any time, sustain or incur, or be put to, for or by reason or in consequence of said company having executed said bond."

The authorities cited by counsel I think also sustain the proposition that in the absence even of such a provision either principal upon a joint bond impliedly undertakes to indemnify a surety for a loss sustained by a breach of the bond either upon his part or upon that of the other principal. (The

reporter will add a note containing a list by titles of these authorities.)[1]

The case of *Broome v. Mordecai*, 117 S. C., 195, 108 S. E., 407, 410, is not opposed, as that was a case controlled by the decision of *Miller v. Sligh*, 10 Rich. Eq., 247, to this effect: "When there are *joint trustees*, the general rule is that each is liable for his own acts alone, and not for the acts of his co-trustees, except where he has contributed to them."

Both turned upon this principle and not upon such a *bond* as is here presented.

But in my opinion there is this consideration which prevents the application of these principles to the case at bar:

There can be no question as to the correctness of the proposition that upon the death of a joint guardian the right to the possession of the assets of the estate, and the sole right to administer the trust, devolves upon the surviving guardian. McFadden therefore had the legal right to demand and receive of the executrix, the securities in which Brice had invested the trust funds, and the executrix had the legal right to turn them over to McFadden, without an order of Court and without notice to the Surety Company.

It must be presumed that when Brice accepted the appointment of himself and McFadden as joint guardians,

---

[1]The following authorities are cited in support of the contention of the Surety Company, respecting the liability of principals under a joint bond: *Jones' Heirs v. Jones' Administrator*, 42 Ala., 218; *Hughlett v. Hughlett*, 5 Humph. (Tenn.), 453; *Hoell et al. v. Blanchard, etc.*, 4 Desaus., 21; *Dobyns v. McGovern, et al.*, 15 Mo., 662; *Stephens et al. v. Taylor et al.*, 62 Ala., 269; *Babcock v. Hubbard*, 2 Conn., 536; *Eckert v. Myers et al.*, 45 Ohio St., 525, 15 N. E., 862, 864; *Ames v. Armstrong*, 106 Mass., 15; *Jamison v. Lillard*, 12 Lea (Tenn.), 690; *Jefferies v. Lawson*, 39 Miss., 791; *Moore v. Wallis*, 18 Ala., 458; *Miller et al. v. Sligh et al.*, 10 Rich. Eq., 247; *Hill v. Wright*, 23 Ark., 530; Brandt on Suretyship, pars. 145, 205, 207, 221; *Leary et al. v. Murray* (C. C. A.), 178 F., 209, 21 Ann. Cas., 868; *Mellette Farmers' Elevator Co. v. H. Poehler Co.* (D. C.), 18 F. (2d), 430; *Williams et al. v. U. S. F. & C. Co.*, 236 U. S., 549, 35 S. Ct., 289, 59 L. Ed., 713.

and executed a joint bond as such, he knew, and must have contemplated, that if he should die pending the administration of the estate, it would become a part of the fiduciary duties of McFadden, surviving, to receive his unadministered assets, and thereafter to conduct himself in reference to them, as if he had originally received them; it was a necessary incident of his obligation, which to the extent of *delivering* the securities to McFadden has been fulfilled. It was just as much an incident of McFadden's obligation, that upon the death of Brice, pending the administration, he would receive such unadministered assets and faithfully execute the trust in relation to them.

While it was the duty of the executrix to turn over to McFadden the unadministered assets, and of McFadden to receive them, I find no ground for holding that this act, *ipso facto,* constituted a release of Brice's obligations *under the bond.* No one but the Court had the power to declare such a result.

If the executrix had had any justifiable reason to think that the securities on hand could not be safely trusted to McFadden, and had made that appear to the chancellor, I think that it would have been an unwarranted constriction of the great powers of a court of equity to deny to the chancellor the power to give her relief.

Or if she had no such suspicion, a court of equity, upon due notice to the Surety Company, had the power to confirm such action and discharge the estate of Brice.

Evidently the latter was the condition then presented: McFadden at that time was a lawyer of outstanding prominence by reason of his reputation and ability at the Chester bar; no one, not even the Surety Company whose attorney he was, had the slightest suspicion of his unfaithfulness. The executrix certainly had none; she acted upon the advice of a lawyer of unquestioned ability and character, and doubtless was moved by the very natural and proper desire to turn over all the affairs of the guardianship in the hands

of her husband, and be quit of all responsibility in connection with it.

If upon this showing the Court would have confirmed her action, after due notice to the Surety Company, and released her from all further liability upon the bond, I think that it may now do the same thing *nunc pro tunc*, in the absence of evidence of prejudice to the rights of the Surety Company. *Poole v. Bradham,* 143 S. C., 156, 141 S. E., 267.

There is not the slightest evidence tending to show that the Surety Company would have been prejudiced by such an order. As early as September, 1919, about a year after the securities had been turned over to McFadden, the Surety Company was notified by letter of McFadden, dated September 30, 1919, of the death of Brice and that the securities which he held had been turned over to McFadden as surviving guardian, that he was in active charge of the administration and that the papers were in excellent condition and correct in every way. The company replied on October 16th: "We are greatly indebted to you for your full explanation of the matter.   *   *   *   We fully understand the entire situation at this time" and asking McFadden to give them an inventory of the property in his possession "and under your control as guardian of said ward." Later in January, 1920, the company wrote: "What we desire is to be advised that the matter of the estate of Coralie Means has been fully accounted for up to the date of the death of Mr. Brice and the estate of Mr. Brice and this company as his surety fully discharged from all liability with respect to the assets of this ward," and asking for a copy of the return of the estate of Coralie Means with an inventory of the assets in his possession and under his control as guardian. The evidence is replete with circumstances showing that the Surety Company knew of the death of Brice, knew that the executrix had turned over all the unadministered assets to McFadden, that McFadden was in possession of them, was in active charge of the administration, and that they would look solely to

McFadden whom they trusted for the proper administration of the estate with no intention of looking to the Brice estate for anything connected with the management or for any claim of indemnity in the event that McFadden did not faithfully execute the trust.

The Surety Company with this knowledge must have known that the purpose of the executrix was to rid herself of any further connection with the estate; their conduct naturally induced a sense of security on her part. If the company at that time had had any objection to the delivery of the securities to McFadden and to the evident desire of the executrix to be free from further liability in the matter, they should have taken some action to disabuse her mind of such impression and to give her notice that notwithstanding the fact that she had done what she had the right to do and what McFadden had the right to demand of her, they were still looking to her in the event of a defalcation by McFadden. Their conduct throughout was calculated to create the impression on her mind that they were looking to McFadden alone.

4. The rights of the Surety Company against Anderson:

The facts bearing upon the contention of the Surety Company, affecting the land of Anderson, are as follows, possibly repeating what may already have been stated:

In February, 1913, the guardians referred to loaned $4,-000 of the guardianship funds to one McCluney. The loan was secured by first mortgages upon two tracts of land, aggregating 130 acres, executed at different times but to secure the same debt.

In January, 1914, McCluney paid the first year's interest upon the loan, $320; and in November, 1914, finding himself unable to pay the debt, he conveyed the land, in satisfaction of the mortgage, estimated then to be $4,320, to the guardians.

In the return for 1914, the guardians charged themselves with $264 as interest on the mortgage and $240 income for 1915, $240 income for 1916, and $304.25 income for 1917.

In the return for 1914 the land as conveyed by McCluney was returned as $4,000 cash, the deed being held by the guardians for the benefit of the guardianship estate, of course, and in the same return the account of the guardians was credited with $4,000, the McCluney land, as an investment. It is plain, therefore, that the McCluney land thus passed out of the account for the years 1913 to 1918, which has been considered as the basis of the statement of Brice's account.

After the death of Brice in 1918, McFadden had the management of the McCluney land. In my statement of Brice's account it does not appear, and properly so, as the deed itself was turned over to McFadden along with the other securities, by the executrix, in September, 1918.

In January, 1920, McFadden advertised the McCluney land for sale at public outcry at the courthouse. As a result of this sale and private negotiations pursuant thereto, McFadden arranged a sale of the land to the defendant, J. Weldon Anderson, and his brother and executed to them a deed of conveyance for a consideration of $4,609.07. Thereafter the brother of J. Weldon Anderson conveyed his half interest to him; he has been in sole possession of the land and has made extensive improvements thereon since the date of the deed, January 26, 1920.

The contention of the surety company is that the acceptance by the guardian of the McCluney deed and that the deed from McFadden to the Andersons were both irregular without an order of Court in each instance; that as a consequence the title to the land is in the guardianship estate or in the plaintiff as she has become of age; and that upon their satisfaction of the liability which they may have incurred under the bond, they will become subrogated to the

rights of the plaintiff in the land, title to which is now apparently in the defendant J. Weldon Anderson.

I do not think that there can be a doubt but that both transactions were irregular. After the guardians had made the loan to McCluney, they were not authorized to convert funds of the estate into real estate without an order of the Court, or after the conveyance from McCluney to convey the land to the Andersons.

"It was not permissible (at common law, referred to by the author), for a guardian to change real estate into personal, or personal into real, except for reasons which had been passed upon by the Court. He could not therefore sell real estate of the ward except in compliance with an order of Court; and this rule still generally exists unless altered by statute." 12 R. C. L., 1127.

"The same considerations prohibit the guardian to change the nature of his ward's estate in the contrary direction by buying real estate with the ward's money; and on arriving at the age of majority the ward has the option to accept the property so acquired and thereby ratify the unlawful act, or to repudiate it and claim his original property." 12 R. C. L. 1127.

"From this it can be seen that there is no inherent power in the guardian to sell the ward's land. Before he can sell he must have the power to do so conferred by a Court of proper jurisdiction acting under authority of the statute. A sale of an infant's real estate made by a guardian without the sanction and order of the Court properly obtained, would be void." 3 Thomp. Real Prop., § 2732.

The transactions, however, I think were voidable and not void. It was within the power of the ward to disaffirm either, and having confirmed both this this action seeking an account of the matter as cash, which has been awarded to her, her right of disaffirmance has passed away. There is nothing, therefore, to which the surety company could be subrogated. The deed from McFadden to Anderson having been ratified

by the plaintiff, who has been given full benefit of it in the accounting, becomes a valid deed in fee simple.

It is true that the title vested in the guardians by the deed of McCluney, but it was in them as trustees. Upon the death of Brice it passed to McFadden as surviving guardian, but he had no right to convey it except in the execution of his trust. His deed to Anderson has been perfected, not because McFadden had the right to convey it, but because the ward has ratified what she might have disaffirmed.

I think that the reasoning and conclusions of the circuit Judge and of Mr. Justice Carter in recognizing the right of the guardian as the holder of the legal title to convey in a manner that would unquestionably constitute a breach of trust would establish a very dangerous precedent, unlimited by the right of the beneficiary to disaffirm.

Messrs. Justices Blease and Stabler concur.

Mr. Chief Justice Watts concurs in part.